(80 South. 229)

No. 22975.

Succession of ROUSE.

(Nov. 4, 1918.   On Application for Rehearing,
Dec. 2, 1918.)

*(Syllabus by the Court.)*

1. COMPROMISE AND SETTLEMENT ⚖⟹17(1) —
CONCLUSIVENESS.

A written settlement between parties who
are able to contract is the law unto them until
it is set aside in a direct action for that pur-
pose.

2. EXECUTORS AND ADMINISTRATORS ⚖⟹513
(3)—SETTLEMENT—COLLATERAL ATTACK.

A petition which ignores such settlement,
and in which it is averred that no settlement
was ever made, is irregular, and will be dismiss-
ed on exception.

3. EVIDENCE ⚖⟹385—PAROL EVIDENCE—AD-
MISSIBILITY.

Parol evidence is incompetent to change or
modify a written agreement in the absence of
alleged error, fraud, etc.

4. PLEADING ⚖⟹166 — ANSWER — "ALLEGA-
TION OF NEW FACT"—STATUTE.

An allegation in a petition that there has
not been a settlement between the parties which
is met by a general denial and an averment that
a settlement in writing has been made is not an
allegation of a new fact by defendant.  Such
condition is not covered by the terms of Code
Prac. art. 329.

*(Additional Syllabus by Editorial Staff.)*

5. WILLS ⚖⟹658—PROVISION AGAINST CON-
TEST—APPLICATION.

On a petition against a succession and the
decedent's widow by his second marriage, im-
pleaded as legatee of the decedent and as one
of his executors for a settlement of the com-
munity formerly existing between plaintiffs'
father and mother, a prayer contained in a
reconventional demand for collations by plain-
tiffs, and for a forfeiture of their rights under
the will, would be disallowed; the provision of
the will declaring a forfeiture of inheritance by
plaintiffs for contesting it having no applica-
tion.

6. HUSBAND AND WIFE ⚖⟹249—COMMUNITY
PROPERTY.

Property standing in the name of the hus-
band which had been acquired during the ex-
istence of a first community, consisting of hus-
band and first wife, was an asset of that com-
munity.

Appeal from Civil District Court, Parish
of Orleans;  Fred D. King, Judge.

Suit by Mrs. Marie Hillery and Mrs. Jose-
phine Augustin against the succession of
John D. Rouse and Mrs. Blanche W. Rouse,
impleaded as legatee of the decedent, and
as one of the executors of his will, for the
settlement of the community formerly ex-
isting between the plaintiffs' father and
mother, and against the Atlantic Savings
Bank & Trust Company, N. J., and the Com-
mercial-Germania Savings Bank & Trust
Company, coexecutors with the widow, with
reconvention by defendants.   Judgment for
plaintiffs against the succession and the wid-
ow, and defendants appeal, and plaintiffs ask
for an amendment of the judgment.   Judg-
ment reversed, and suit dismissed, and re-
conventional demand dismissed as in case
of nonsuit.

McCloskey & Benedict, of New Orleans, for
appellants executors and Mrs. Blanche W.
Rouse individually.

Dart, Kernan & Dart, of New Orleans, for
appellees Mrs. Marie Hillery and others.

SOMMERVILLE, J.   Mrs. Marie Hillery
and Mrs Josephine Augustin, the two children
of the late John D. Rouse, issue of his mar-
riage with Mrs. Josephine Julian, his deceas-
ed first wife, sue the succession of John D.
Rouse and Mrs. Blanche W. Rouse, widow
by second marriage of John D. Rouse, who
was impleaded in her capacity as such wid-
ow, as legatee of the decedent and as one of
the executors of his will for a settlement of
the community formerly existing between
their father and mother, both deceased.   The
Atlantic Savings Bank & Trust Company of
New Jersey and the Commercial-Germania
savings Bank & Trust Company of New Or-

leans, coexecutors with the widow, were joined as defendants in the suit.

The petition alleges substantially that the petitioners are the lawful children and sole heirs of the late Mrs. Josephine Julian, deceased wife of the late John D. Rouse; that she died intestate in New Orleans October 24, 1899, and that her succession was opened in the civil district court; that the deceased parents of the petitioners were married under the community of acquêts and gains in New Orleans; that the community was dissolved by the death of petitioners' mother in New Orleans on October 24, 1899; that the community of acquêts and gains remained under the control and enjoyment of petitioners' deceased father until his death on August 11, 1916; that he enjoyed the said usufruct, use, and possession notwithstanding he had remarried some years after the death of the mother of petitioners; and that he was not disturbed in his said usufruct or possession by the petitioners.

In paragraph III of the petition it is alleged, under oath:

"Petitioners show that the community of acquêts and gains which existed between petitioners' mother, the late Josephine Julian Rouse, and petitioners' father, the late John D. Rouse, was never adjusted or settled; that the said community had property and effects and was valuable, and after providing for all debts and obligations of every kind, the net share and interest of petitioners therein was at least $50,000, or $25,000 each."

In paragraph VI it is alleged:

"Petitioners show that it is proper at this time to adjust and settle the community of acquêts and gains aforesaid, and furthermore to divide and partition the two estates, and to pay, deliver, and surrender to petitioners their share and interest in their mother's succession aforesaid, and to that end to render such just and proper judgment in the premises as will finally and permanently close and determine the interests of all parties therein."

In paragraph IV it is alleged:

"Petitioners show that among the effects of the community aforesaid there is certain real property situated in New Orleans, on Terpsichore street, in square bounded by Carondelet, Terpsichore, St. Charles, and Euterpe streets, more particularly described in the exhibit or detailed description thereof hereunto annexed as part hereof, which property was acquired by said John D. Rouse during the existence of the said community, as stated in said memorandum."

And petitioners pray for judgment in petitioners' favor and against said defendants adjusting, determining, settling, and fixing the status of the community lately existing between Josephine Julian Rouse and John D. Rouse, both deceased, and that petitioners have judgment against the said defendants for their share, portion, and interest therein, and that the said defendants be condemned to pay to petitioners jointly, that is to say, one-half to each, the full sum of $50,000, with legal interest from November 26, 1906, and that a decree of partition be rendered for the division of the said estates, either in kind or by licitation, as the evidence may justify; and petitioners pray for such other and further orders and judgments as the case may require and for all general and equitable relief.

On their brief plaintiffs have limited their demand to $30,535.96, with interest.

Defendants answered in part as follows:

"(3) Respondents deny the allegations of fact contained in the third article of said plaintiffs' petition, and state that the contrary is the truth, that as a matter of fact the said community had no property or effects, and that it is not true that, after providing for every debt and obligation of every kind, the net share of petitioners therein was at least $50,000, or $25,000 each; but, on the contrary, respondents aver that the said community was at the date of the death of said Josephine Julian Rouse wholly and totally insolvent, and that the late John D. Rouse did as a fact completely and finally adjust and settle the said community with the said petitioners, and received from them, in writing, his full acquittance and discharge.

"(4) In answer to the fourth article of plaintiffs' petition, respondents admit that the real

estate described therein existed and was acquired by the late John D. Rouse during the existence of the said community, but, as stated in answer to article third, the said petitioners have no right, title, or interest in and to the share which would otherwise have been inherited by them from their late deceased mother, Josephine Julian Rouse, because of the settlement aforesaid. * * *

"(6) In answer to the allegations contained in article 6 of plaintiffs' petition, respondents show that same contains no allegations of fact requiring specific answer, but they deny that it is proper at this time to adjust and settle the community of acquêts and gains, or to divide and partition the two estates, or to pay and deliver and surrender to petitioners their share in their mother's succession, for the reasons set forth in article 3 of this answer, which sets forth that the said petitioners have been fully, finally, and completely settled with, and have discharged their said father. * * *

"And, further answering, respondents say that the said late John D. Rouse did, on the 8th day of July, 1910, in writing, serve said petitioners herein specially with detailed statements of the community of acquêts and gains existing between said deceased and the mother of said petitioners as of the time of the date of her death, October 24, 1899, and in connection therewith exhibit in detail all receipts and disbursements pertaining to the said community, and that on the ―――― day of November, 1911, the said Mrs. Charles D. Augustin, one of the petitioners, admitted that fact, being credited with everything to her coming from the estate of her late deceased mother, admitted that she was indebted to her father, J. D. Rouse, in the sum of $1,624.94, together with $20 additional to said above amount, and which amount the said petitioner agreed to be collated by her in the settlement of his said succession.

"And on the 27th of May, 1911, the said John D. Rouse made a complete and final settlement with the other named petitioner, Mrs. John A. Hillery, and paid her in cash the sum of $449.-07 in full, final, and complete settlement of her interest in and to the community aforesaid, and that said Mrs. John A. Hillery received and receipted for said amount.

"And respondents aver that the trial balance of the said community of date October 31, 1899, the balance sheet of the said ledger of the same date, the statement of debts owing by John D. Rouse on October 24, 1899, and since paid by him, and the statement of assets of the said John D. Rouse of October 24, 1899, together with the full account of the items which were charged to profit and loss, were duly acknowledged in writing by said petitioners severally.

"And, further answering, respondents aver that said deceased John D. Rouse did, on the 24th of April, 1912, receive a written acknowledgment from said petitioners that they had on said 8th of July, 1910, received copies of the statements hereinabove referred to, identified by their respective signatures; that petitioners found same correct, and further acknowledged the payment by said John D. Rouse to each of said petitioners respectively of the sum of $1,-787.56 as the amount of their interest in their mother's succession.

"And now, assuming the character of plaintiffs in reconvention, respondents say that the said petitioner Josephine Antonia Rouse, wife of Charles D. Augustin, is indebted unto the said John D. Rouse in the sum of $1,644.94, which should be collated herein, with interest from April 24, 1912, until paid. * * *

"That the petition herein filed by the said plaintiffs constitutes an attack upon the last will and testament of the deceased (Maj. Rouse), within the meaning of his will, which operates a judicial estoppel to said plaintiffs to claim anything thereunder, forfeits their respective shares therein, and concludes their assertion of any rights thereunder or thereto.

"Wherefore respondents pray that the petition of said Mrs. Charles D. Augustin and Mrs. John A. Hillery be dismissed at their costs, and that the said Mrs. Charles D. Augustin be ordered to collate in this succession the sum of $1,644.94, with interest from April 24, 1912, until paid, for such distribution hereafter as this court shall decree; and respondents further pray that this honorable court do decree that the petition herein filed by the said plaintiffs constitutes an attack upon the will of the late deceased, within the meaning thereof, and that such attack, as a matter of law, forfeits in favor of the remaining residuary legatee or legatees every manner of bequests otherwise devolving upon the said plaintiffs; and respondents pray for costs and for general relief."

Defendants filed an amended answer, wherein they averred that the real property in Terpsichore street, in the city of New Orleans, was mentioned and included in the settlement made by Maj. Rouse with his daughters, but that a formal transfer had not been made of their interests therein to their father; and defendants prayed for

judgment transferring such title to the succession of John D. Rouse.

There was judgment in favor of plaintiffs and against the succession of Major Rouse and his widow for $33,764.56, with interest from judicial demand, subject to a credit on the share of Mrs. Josephine Rouse Augustin of $1,644.94, and that plaintiffs be recognized as the owners of one-fourth each of the Terpsichore street property.

Defendants have appealed, and plaintiffs have asked for an amendment of the judgment.

Plaintiffs in their petition, as set forth above, distinctly averred in paragraph III "that the community of acquêts and gains which existed between petitioners' mother, the late Josephine Julian Rouse, and petitioners' father, the late John D. Rouse, was never adjusted or settled," and in paragraph VI "that it is proper at this time to adjust and settle the community of acquêts and gains aforesaid."

These allegations were met and positively denied as is set forth in paragraph III, quoted above.

And then follow, as already copied herein, the details of the settlement with names, amounts, dates, etc.

The issue was clearly presented by plaintiffs, and it was as clearly met by defendants. Plaintiffs alleged that there had been no settlement of the community, and defendants answered that there had been.

This written settlement between Maj. Rouse and his daughters was offered in evidence by defendants on the trial of the cause, and defendants objected to parol evidence offered by plaintiffs to vary the terms of the foregoing noted written documents on the grounds that it was not admissible, under article 2276, C. C., and because it would constitute a collateral attack upon said settlement. The objections should have been sustained.

The settlement between plaintiffs and their father consists of several documents, as follows:

(1) Two letters written by Maj. Rouse to his daughters nearly 11 years after the death of his first wife. One of these letters is as follows (the other is addressed to Mrs. Augustin, and is similar in all respects to this one, except that it contains an additional paragraph personal to Mrs. Augustin):

"July 8, 1910.

"Mrs. Marie L. Hillery, New Orleans, La.— Dear Daughter: I hand you herewith statements of the condition of community of acquêts and gains between me and your mother at the time of her death, October 24, 1899. I never made any statement before because the community was so largely insolvent that it seemed useless to do so. Upon further consideration I think it best to give you and Jessie all the details, while we are still alive.

"I have kept a complete set of books by double entry ever since July 6, 1872, and every item in the accounts now submitted can be verified by said books.

"I submit a trial balance of my ledger October 31, 1899, being the first balance after your mother's death. I submit a balance sheet of the same date, which shows all my assets and liabilities on that date excepting accrued interest on my debts, paid afterwards. Some of the assets were only apparent and should have been charged to profit and loss, long before, a list of which is herewith submitted.

"I also submit a statement of all that has been realized out of said assets, as well as an estimate of the value of such as have not been realized, the whole amounting to $57,167.92; also a statement of debts paid, amounting to $76,068.76, a sum exceeding the assets by $19,-900.84, which I paid out of earnings subsequent to the dissolution of the community. I was bound for the whole, whether the assets of the community were sufficient or not.

"The most serious losses were on the house No. 2605 St. Charles avenue, and the furniture, the latter of which I will explain in detail hereafter. I will also submit later a detailed list of my notes covered by the term 'Bills Payable,' and of the interest paid thereon [which he did April 24, 1912].

"I regret not being able to make a better showing, but it is a true one.

"Your affectionate father,

"[Signed]    J. D. Rouse."

(2) "Trial balance of ledger of J. D. Rouse, October 31, 1899."

(3) "Balance sheet of ledger of J. D. Rouse, October 31, 1899."

(4) "Statement of debts owing by J. D. Rouse, October 24, 1899, paid by him," amounting to $76,068.76, "less assets, as per statement annexed, $57,167.92."

"Debts paid by J. D. Rouse in excess of assets of the community between him and his wife, which was dissolved by her death October 24, 1899, $19,900.84."

(5) "Statement of assets of J. D. Rouse, October 24, 1899, showing amounts realized, estimated value of such as are unsold, and items a total loss."

(6) "Items to be charged to profit and loss."

These six documents were signed by Major Rouse, Mrs. Hillery, and Mrs. Augustin, July 8, 1910, the same date as was his letters to them.

(7) The following receipt signed by Mrs. Hillery and Mrs. Augustin:

"I acknowledge to have received from my father, J. D. Rouse, July 8, 1910, copies of the annexed statements, identified by my signature, and have found the same to be correct:

"1. Trial balance of his ledger of October 31, 1899.

"2. Balance sheet of his ledger of October 31, 1899.

"3. Statement of debts owing by him October 24, 1899, and since paid by him.

"4. Statement of his assets of October 24, 1899, of amount realized therefrom, and estimated value of such as has not been disposed of.

"5. Statement of items of account to be charged to profit and loss.

"And I further acknowledge the payment by him to me of $1,787.56, one-half of the amount standing to the credit of my mother, as shown by the balance sheets aforesaid.

"New Orleans, April 24, 1912.
"[Signed]    Marie L. Hillery.
"Josephine A. Augustin."

(8) "May 27, 1911. Mrs. John A. Hillery, in Account with J. D. Rouse.
"1910                                          Cr.
"July 8. By her share as heir to balance to credit of her mother when she died.......................$1,787.57."

Other items follow showing a balance due Mrs. Hillery of $449.07. At the bottom of the account it is stated:

"For which amount I hand you my check herewith. Your affectionate father,
"[Signed]              J. D. Rouse.
"Received above-named check for $449.07.
"[Signed]         Mrs. John A. Hillery."

(9) "J. D. Rouse in Account with Mrs. Charles D. Augustin. * * * Cr. By her share as heir of balance to credit of her mother when she died, $1,787.36. Balance due J. D. Rouse, $1,624.94.

"I have read the foregoing account and find it correct, and acknowledge that the balance $1,624.94 is an advancement to me as presumptive heir of my father, J. D. Rouse, which amount shall be collated by me upon the settlement of his succession.

"He has also advanced me $20.00 in addition to the above amount which is also to be collated.
"[Signed]    Mrs. Charles D. Augustin."

"The above account was rendered and acknowledged in November, 1911.
"[Signed]    .    J. D. Rouse."

(10) "Statement of bills payable (notes) of J. D. Rouse outstanding October 24, 1899, afterward paid by him and interest paid thereon," amounting to $54,135.94, with the following receipt: "Received copy of above April 24, 1912.
"[Signed]  Marie L. Hillery. April 27, 1912.
"[Signed]  Josephine A. Augustin."

(11) "Received, New Orleans, July 8, 1910, from J. D. Rouse, $500.00 on account of my share (one-half) of amount due my mother by him, when she died October 24, 1899.
"[Signed]  Marie L. Hillery."

(12) "Received, New Orleans, Oct. 15/10, from J. D. Rouse, $500.00 on account of my share (one-half) of amount due my mother by him, when she died Oct. 24, 1899.
"[Signed]  Marie L. Hillery."

The accounts rendered by Maj. Rouse to plaintiffs are clear and readily understood. Plaintiffs were married and of mature age when the accounts were rendered to them and when they gave receipts to their father. Maj. Rouse declared in writing (July 8, 1910) that the statements he was submitting to plaintiffs disclosed "the condition of community of acquêts and gains between me and your mother at the time of her death, October 24, 1899"; and the receipt given by plaintiff Mrs. Augustin acknowledged "the payment by him to me of $1,787.56, one-half of the amount standing to the credit of my mother, as shown by the balance sheets aforesaid." And Mrs. Hillery, the other plaintiff, stated in her receipt, "Received above-named check for $449.07," which was attached to the account between her and her father of

May 27, 1911, in which the first item is: "July 8, 1910. By her share as heir to balance to credit of her mother when she died, $1,787.57." The entire transaction between Maj. Rouse and plaintiffs was a settlement of the community of acquêts and gains between him and Mrs. Rouse, the mother of plaintiffs.

Plaintiffs admit their signatures to the documents and that they received the amounts stated in the accounts. They do not allege omissions therefrom, or error or fraud in any one of them.

They say in their petition that the community of acquêts and gains which existed between their mother and father was never settled. On the brief they say:

"The alleged settlement was really no settlement of the community, but a mere rendition of an account by the survivor which they in ignorance of the true facts approved, but took nothing out of the community as a result of the approval; that they received no consideration for the same; that the accounts were incorrect, and did not show the true state of the community; that said accounts did not include the most important and valuable assets, discovered by plaintiffs after Mr. Rouse's death," etc.

But they did not allege in their petition, or in any subsequent pleading, that the accounts and moneys which they received from their father were "incorrect and did not show the true state of the community," or that the accounts contained errors, omissions, or fraudulent entries, or that there was concealment, or that violence was used by their father. The court cannot therefore find and hold "that plaintiffs are not bound by the same by reason of the bad faith and fraud of Mr. Rouse in the premises and by reason of their ignorance of the facts and errors caused by Mr. Rouse's action in suppression of the truth then and there," as it is asked to do for the first time on the brief.

[1, 2] The plaintiffs are bound by the written agreement or settlement made by them with their father. It is not an absolute nullity. And it cannot be attacked collaterally. A direct action is necessary to set that settlement aside. The suit by plaintiffs for a settlement without referring to the settlement already made with and by them is irregular, and an exception thereto must be sustained. Graham v. Hester, 15 La. Ann. 148; Bankston v. Owl Bayou Cypress Co., 117 La. 1053, 1064, 42 South. 500; Hughes v. Edson, 129 La. 866, 871, 57 South. 154; Hibernia Bank v. Whitney, 122 La. 891, 48 South. 314 (No. 4); Smith v. Krauss Co., 125 La. 703, 51 South. 693 (No. 1).

This suit is not to set aside the settlement made by plaintiffs with their father of the community of acquêts and gains between Maj. Rouse and his first wife; and until that settlement is attacked by plaintiffs it is binding on them; and they may not attack it collaterally. The judgment appealed from will be reversed.

Defendants have filed in evidence a contract or agreement which on its face is legal. It was entered into voluntarily by parties capable of contracting. And the intent of the parties thereto is clearly expressed. The court is therefore bound to give legal effect to it until it is directly attacked and avoided or rescinded.

[3, 4] The evidence of error and fraud, if the error and fraud existed, could not be received, as contended for by plaintiffs, under articles 328 and 329, C. P. Defendants did not allege new facts in their answer. They specially denied the allegation in plaintiffs' petition saying "that the community of acquêts and gains which existed between petitioners' mother, the late Josephine Julian Rouse, and petitioners' father, the late John D. Rouse, was never adjusted," by answering:

"Respondents deny the allegations of fact contained in the third article of said plaintiffs' petition, and state that the contrary is the truth, * * * and that the late John D. Rouse did as a fact completely and finally ad-

just and settle the said community with the said petitioners, and received from them, in writing, his full acquittance and discharge."

Defendants then proceeded to give the dates and terms of settlement with plaintiffs, with their signatures attached. Defendants did not there allege any new facts. They simply denied the fact alleged by plaintiffs. Plaintiffs cannot therefore be considered to have denied in their petition the denial made by defendants in their answer.

Returning to a consideration of the admissibility of parol evidence offered to attack collaterally a written settlement between the parties, the nonexistence of which was alleged, and was treated by plaintiffs as a nullity, reference is made to the decision in Collins v. Collins' Adm'r, 10 La. 268, where such evidence was excluded. We there say:

"The plaintiff seeks to render the estate of Murtough Collins, administered by the defendant, liable to him for maladministration as his curator ad bona, while a minor, and of the estate of his deceased brothers, of whom the plaintiff is the heir, alleging that Murtough Collins died without rendering any account of his administration.

"The exception to which we allude is that the plaintiff, on the 14th of July, 1825, being then an emancipated minor, had a final settlement with the deceased, M. Collins, and gave him a receipt in full on account of those several administrations, and a release of all mortgages and pretensions resulting from the same, and that he was assisted in the act by his curators ad hoc.

"The .act of release is in the record, and appears to have been passed before the parish judge and two witnesses, and the plaintiff was assisted by L. Lesassier, his curator ad hoc.

"To this it is answered that the act is null, because the plaintiff was a minor at the time, and because not preceded by a rendition of a detailed account and exhibition of vouchers, according to article 355 of the Louisiana Code.

"We had occasion to consider the question here presented in the case of Foutelet et al. v. Murrell, 9 Louisiana Reports, 291, 299, and we then held that the nullity resulting from the want of a rendition of account previous to the release or extrajudicial settlement between the tutor and his former ward is relative, and that the act must have its effect until annulled by direct action, at least so far as third persons are concerned. The plaintiff in his petition makes no allusion to this act, but treats it as an absolute nullity, and contents himself with endeavoring to show its nullity, when it is set up as a defense to this action."

The ruling of the district court excluding parol testimony was affirmed. See, also, Haydel v. Roussell, 1 La. Ann. 35.

[5] The prayer contained in the reconventional demand of defendants for collations by plaintiffs and for a forfeiture by them of their rights under the will of their father cannot be allowed in this proceeding.

This is not a suit to fix the rights of his heirs in the Succession of Maj. Rouse, or to contest the will of Maj. Rouse, and the provision in that will declaring a forfeiture of inheritance by plaintiffs for contesting that will has no application or effect here.

[6] The Terpsichore street property, standing in the name of Maj. Rouse, and acquired during the existence of the first community, was an asset of that community. In his settlement with plaintiffs this property was charged up against Maj. Rouse, and plaintiffs were credited with one-half of the proceeds or estimated value of it. The reconventional demand will be dismissed as in case of nonsuit.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that this suit be dismissed at plaintiffs' costs.

The reconventional demand of defendants is dismissed, as in case of nonsuit.

O'NIELL, J., concurs in the decree.

PROVOSTY, J., absent on account of illness, takes no part.

On Application for Rehearing.

PER CURIAM. In their application for rehearing plaintiffs ask that our decree be amended so as to make it a judgment of non-

suit, to avoid its having the effect of res judicata in the event of a direct action being brought to annul the settlement had between the plaintiffs and their father. We considered that question before handing down our decree, and concluded that it could not have the force of res judicata in a direct action to annul the settlement. The application for rehearing is denied.