# Supreme Court of Louisiana

The Opinions handed down on the **6th day of September, 2024** are as follows:

**BY Griffin, J.:**

| | |
|---|---|
| 2023-C-01447 C/W 2023-C-01452 | SUCCESSION OF BONNY BABIN MALONEY (Parish of Jefferson) AFFIRMED. SEE OPINION. |

Hughes, J., dissents and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2023-C-01447

c/w

No. 2023-C-1452

SUCCESSION OF BONNY BABIN MALONEY

*On Writ of Certiorari to the Court of Appeal, Fifth Circuit, Parish of Jefferson*

**GRIFFIN, J.***

We granted this writ to determine whether a no-contest clause in a will is enforceable for an action taken outside the will's succession proceeding. Under the unique facts of this case and the language of the no-contest clause herein, we answer in the affirmative.

## FACTS AND PROCEDURAL HISTORY

Bonny Babin Maloney ("Mrs. Maloney") was married to Robert Maloney, Sr. until his death in June 2019. Mrs. Maloney died in May 2020. The couple had five children including Robert, Jr., Kurt, Craig, and Julie.[1]

Robert, Sr. executed a notarial will in December 2012. Three codicils were executed the year prior to his death. The first increased the property bequeathed to Mrs. Maloney including Robert, Sr.'s one-half community interest in the family home and added a no-contest clause. The second included additional bequests to Mrs. Maloney that slightly reduced the inheritances of Robert, Jr. and Kurt. The third made changes to the executors in the event Mrs. Maloney were unable to serve.

Upon Robert, Sr.'s death, Mrs. Maloney opened his succession and was confirmed as independent executrix. A judgment of partial possession was rendered

---

*  Retired Justice Jeanette T. Knoll, appointed Justice pro tempore, sitting for the vacancy in the Third District.

[1]  Another daughter, Jeanie, is deceased.

in August 2019 that placed Mrs. Maloney in possession of various assets including the community property bequeathed to her in the first two codicils of Robert, Sr.'s will. The family home and other assets then belonged solely to Mrs. Maloney, in full ownership.

Mrs. Maloney subsequently executed a new Last Will and Testament ("Testament") in September 2019 to include the assets she inherited from Robert, Sr. The Testament named Craig as independent executor. The Testament also listed the family home as the separate property of Mrs. Maloney and bequeathed it in full ownership to Julie. One quarter of Mrs. Maloney's residual estate was bequeathed to each of the surviving children. The Testament included a no-contest clause, Article 13.1, which disinherits and revokes any legacy to any legatee or heir who contests or challenges it, who seeks to impair or invalidate any provision of it, or "is otherwise engaged in a controversy with or against the Executor of [Mrs. Maloney's] estate and which concerns her estate."

Upon Mrs. Maloney's death, Craig succeeded her as independent executor of Robert, Sr.'s succession and was confirmed as independent executor of Mrs. Maloney's succession. Both successions remain open, and Craig remains the executor in each.

In August 2020, Robert, Jr. and Kurt (collectively "Applicants") filed a petition in Robert, Sr.'s succession to annul the codicils, to vacate the judgment of partial possession, and for injunctive relief averring various infirmities in execution including lack of testamentary capacity. The petition named Craig as defendant in his capacity as both the executor of Robert, Sr.'s estate and as the "succession representative of Bonny Babin Maloney." The petition sought to annul the bequest made to Mrs. Maloney of Robert, Sr.'s community interest in the family home. A temporary restraining order ("TRO") was sought to prevent Craig, "from alienating, [or otherwise] encumbering … any moveable or immovable property comprising the

2

estate of [Robert, Sr.] including but not limited to all property set forth in the [judgment of partial possession]" – this included the family home bequeathed to Julie in Mrs. Maloney's Testament. The TRO was granted thus prohibiting Craig, as executor of Mrs. Maloney's estate, from placing Julie in possession of her inheritance. The trial court ultimately ruled that Robert, Sr. had testamentary capacity to execute the codicils. On subsequent motion by Craig as executor of Robert, Sr.'s estate, the trial court disinherited Robert, Jr. and Kurt pursuant to the no-contest clause in the first codicil of Robert, Sr.'s will.

Craig, as executor of Mrs. Maloney's estate, filed a petition for declaratory judgment in Mrs. Maloney's succession seeking to enforce the no-contest clause in Article 13.1 of Mrs. Maloney's Testament. Craig later moved for partial summary judgment against Robert, Jr. and Kurt arguing that by filing suit and obtaining a TRO against him in Robert, Sr.'s succession in his capacity as executor of Mrs. Maloney's estate, effectively enjoined him from administering the assets of Mrs. Maloney's estate. The trial court granted judgment in favor of Craig finding that Robert, Jr. and Kurt violated the no-contest clause in Article 13.1 by engaging in a controversy against the executor of Mrs. Maloney's estate that concerned her estate. Robert, Jr. and Kurt were thus disinherited from Mrs. Maloney's estate. The court of appeal affirmed based on the clear and unambiguous language of the no-contest clause.

Robert, Jr. and Kurt filed separate writ applications to this Court which we granted. *Succession of Maloney*, 23-1447 (La. 1/17/24), 376 So.3d 845; *Succession of Maloney*, 23-1452 (La. 1/17/24), 376 So.3d 840.

**DISCUSSION**

The issue before this Court is whether partial summary judgment in favor of Craig was appropriately granted under the language of the no-contest clause in Mrs. Maloney's Testament. Determination of whether the language of a will is clear and unambiguous is a question of law subject to *de novo* review. *Succession of Foster*,

3

19-0209, p. 8 (La.App. 4 Cir. 7/31/19), 363 So.3d 505, 511. Similarly, the grant or denial of a motion for summary judgment is reviewed *de novo* using the same criteria as trial courts. *Catzen v. Toney*, 22-1261, p. 3 (La. 1/18/23), 352 So.3d 972, 974.

"A cardinal rule of the interpretation of wills is that the intention of the testator as expressed in the will must govern." *Succession of Liner*, 19-2011, p. 4 (La. 6/30/21), 320 So.3d 1133, 1137 (citing *Soileau v. Ortego*, 189 La. 713, 718, 180 So. 496, 497 (1938)). If the language of a will is clear and unambiguous, it must be carried out as written – its letter is not to be disregarded under the pretext of pursuing its spirit. *See* La. C.C. art. 1611(A). Absent the existence of a forced heir, a testator is free to dispense of her estate in any manner and impose any conditions not contrary to law or good morals. *See* La. C.C. arts. 1519 and 1528.

No-contest clauses, also known as *in terrorem* clauses, are testamentary provisions that trigger the revocation of a bequest if a legatee contests a will. *See Succession of Scott*, 05-2609, p. 3 (La.App. 1 Cir. 11/3/06), 950 So.2d 846, 848 (citing BLACK'S LAW DICTIONERY 819 (6th ed. 1990)). Such clauses are not expressly prohibited under Louisiana law. 10 La. Civ. L. Treatise, Successions and Donations, § 13.10 (citing *Succession of Rouse*, 144 La. 143, 80 So. 229 (1918)). A no-contest clause that comports with La. C.C. arts. 1519 and 1528 is therefore valid and enforceable.

Article 13.1 of the Testament, the no-contest clause at issue, provides in relevant part:

> I hereby specifically disinherit each and every legal heir of mine, and each and every legatee … under this Last Will and Testament … who at any time either (a) contests or challenges this [Testament], any codicils hereto, and any and all orders or judgments rendered in my succession or estate; or (b) seeks to impair or invalidate any of the provisions of this [Testament], any codicils hereto, and any and all orders or judgments rendered in my succession or estate; or (c) is otherwise engaged in a controversy with or against the Executor of my estate and which concerns my estate; or (d) conspires with or voluntarily assists anyone attempting to do any of the acts described in sections (a) through (c) of this Article 13.1…

4

Of particular significance is Article 13.1(c) which triggers the no-contest clause in the event a legatee is "engaged in a controversy … against the Executor of [Mrs. Maloney's] estate and which concerns [her] estate."

Applicants collectively argue that no-contest clauses should be strictly construed and, in this instance, limited to a direct challenge to Mrs. Maloney's succession. Applicants further argue enforcement of overly broad no-contest clauses would have a chilling effect on the ability of a legatee to challenge a will on grounds of lack of testamentary capacity or statutory formalities. Applicants alternatively argue summary judgment was inappropriate as genuine issues of material fact remain as to Mrs. Maloney's intent. Craig counters that the court of appeal correctly concluded Article 13.1(c) of the no-contest clause is clear and unambiguous and must be enforced as written. Craig elaborates the court of appeal found both prongs of Article 13.1(c) were satisfied: 1) applicants engaged in a controversy against him in his capacity as executor of Mrs. Maloney's estate; and 2) the controversy concerned Mrs. Maloney's estate. Craig asserts Mrs. Maloney was free to impose any condition in her testament provided it was not contrary to law or good morals – there is no requirement that a no-contest clause be limited to direct challenges of a given succession. We agree.

As a threshold matter, a court must determine whether a no-contest clause is triggered by the actions of a legatee, i.e., is the no-contest clause applicable. *See Succession of Robinson*, 52,718, p. 9 (La.App. 2 Cir. 6/26/19), 277 So.3d 454, 459; Irina Fox, *Penalty Clauses in Testaments: What Louisiana Can Learn from the Common Law*, 70 La. L. Rev. 1265, 1273 (2010). If an action does not amount to a contest of a will, the no-contest clause is not triggered, and a court need not determine its scope or enforceability. Fox, *supra*. Thus, in *Robinson*, 52,718, pp. 6-9, 277 So.3d at 457-59, the Second Circuit affirmed that a legatee's action did not

5

violate a no-contest clause as "she was seeking a determination of what property should be included as part of the estate, just as if she were traversing a detailed descriptive list." Where children of a testator sued a succession for settlement of the community formerly existing between their father and mother, this Court held it was "not a suit to fix the will of [the decedent]" such that "the provision in [the] will declaring a forfeiture of inheritance … for contesting [the] will has no application." *Rouse*, 144 La. at 156, 80 So. at 234. Or, as succinctly stated in *Succession of Rosenthal*, 369 So.2d 166, 178 (La.App. 4th Cir. 1979), a suit brought by a legatee against an executrix arising out of a shortage of cash required for the payment of succession debts was an "appropriate action to have the will properly administered" and did not constitute "an attack on the will as contemplated by the testator." Suits meant to prevent the squandering of an estate by an executrix facilitate the disposition of the estate according to a testator's wishes. Fox, *supra*, at 1294. The matter before us is distinguishable.

The clear and unambiguous language of Article 13.1(c) of Mrs. Maloney's Testament dictates that Robert, Jr. and Kurt – by obtaining a TRO against Craig in Robert, Sr.'s succession in his capacity as executor of Mrs. Maloney's estate – are disqualified as legatees. As astutely observed by the court of appeal, Mrs. Maloney's inclusion of Article 13.1(c) clearly and unambiguously expressed her intent to broaden the reach of the no-contest clause beyond actions or controversies brought in the instant succession proceeding. *Maloney*, 22-571, p. 14, 374 So.3d at 156; La. C.C. art. 1611(A); *Giroir v. Dumesnil*, 248 La. 1037, 1052, 184 So.2d 1, 7 (1966) ("extrinsic evidence is only used to resolve ambiguity, "not to rewrite [a] will or do violence to its terms"); *see also Kazan v. Red Lion Hotels Corp.*, 21-1820, pp. 3-4 (La. 6/29/22), 346 So.3d 267, 270 (insurance policy may be general without being ambiguous). Disputes or controversies brought in Mrs. Maloney's succession are covered by Article 13.1(a) and (b) whereas the language of Article 13.1(c) reflects

6

an intention for broader application to include any disputes or controversies against her executor concerning her estate – to conclude otherwise would render Article 13.1(c) superfluous. *Maloney*, 22-0571, p. 13-14, 374 So.3d at 155 (further observing the "phraseology [of Article 13.1] conveys mutually exclusive scenarios and an intent to recognize the different meanings of 'succession' and 'estate'"). The TRO effectively sought to remove property from Mrs. Maloney's estate and prevent Craig from administering her estate and the specific bequests contained in her Testament. *Id.*, 22-0571, p. 16, 374 So.3d at 156. The practical result of which would allow Applicants to do indirectly what they could not do directly.

Having affirmed on the narrower grounds of Applicants obtaining a TRO against Craig in his capacity as Mrs. Maloney's executor, we pretermit determination of whether an unsuccessful action against the validity of a will based on a lack of testamentary capacity or deficiency of requisite statutory formalities results in enforcement of a no-contest clause. It has been observed that "where the principal dispositions of the will … have nothing of public import in them, and where the right against which the penal clause operates is only of a private or pecuniary nature, the penalty is good and if an attack is made it will operate to divest the unfortunate litigant of his share." Wood Brown, *Provisions Forbidding Attack on a Will*, 4 Tul. L. Rev. 421, 423 (1930). However, "if the principal disposition is against good morals, then the penal clause automatically becomes against good morals also, since it is surely … to the public interest that such dispositions in wills be attacked." *Id*. It is thus argued that the absence of any leeway for challenging a will in good faith creates a chilling effect against bringing an action as "no one can be sure that a disposition is actually against law or morals until the court has decided the point." *Id*. at 424-25. A resulting balance suggests "a no-contest clause does not foster the probate of invalid wills" as "a successful challenge will invalidate the will, making the no-contest clause of no consequence" whereas the existence of "a no-contest

7

clause will generally prevent frivolous challenges that may exhaust the estate." *Succession of Laborde*, 17-1334, p. 5 (La.App. 1 Cir. 5/31/18), 251 So.3d 461, 464 n. 1 (citing *Smithsonian Institution v. Meech*, 169 U.S. 398, 415, 18 S.Ct. 396, 402-03, 42 L.Ed 793 (1898)); *see also* Brown, *supra* at 424-25 ("there is nothing more worthy than the wish of the testator to prevent wrangling in the courts among his heirs") (citation omitted). One commentator has advocated for Louisiana courts to adopt a modified common law approach allowing for good faith, probable cause exceptions wherein courts consider an action contesting a will on a spectrum: "the more serious and public-policy implicating the allegation, the less showing should be required by the beneficiary." Fox, *supra*, at 1298; Anne Marie Guglielmo, *In Terrorem Clauses: Do They Really Work?*, 26 Westchester B.J. 19, 21 (1999) ("balance between allowing a testator to discourage pesky contestants and providing an avenue for legitimate contests where fraud, undue influence or forgery seem likely"). We leave this question for another day noting that – in the interim – our legislature may wish to evaluate whether public policy dictates that specific statutory exceptions precluding the operation of no-contest clauses should exist based on the nature of a legatee's action in contesting a will.

### **DECREE**

For the foregoing reasons, the grant of partial summary judgment is affirmed.


**AFFIRMED**

**SUPREME COURT OF LOUISIANA**

**No. 2023-C-1447**

**c/w**

**No. 2023-C-1452**

**SUCCESSION OF BONNY BABIN MALONEY**

On Writ of Certiorari to the Court of Appeal, Fifth Circuit, Parish of Jefferson

**Hughes, J., dissents.**

I respectfully dissent. There is no authority in Louisiana law to support a no-contest clause in a will. 10 La. Civil Law Treatise, Successions and Donations, §13.10 cites two cases: **Succession of Rouse**, a 1918 case to settle community property from a prior marriage, and **Succession of Rosenthal**, where the tableau of distribution was attacked, not the will. Neither upholds a no-contest clause.

It is argued that even though there is no authority to support such a clause, they are not "expressly prohibited." Many things are not expressly prohibited. But these clauses are immoral and contrary to civilian principles. Civilian law, unlike common law, is expressly provided for, in a Code. And immoral, because they preemptively deny access to the courts, which is not only immoral but violative of the constitutional guarantees of due process.

Further, these clauses should not be allowed to extort compliance with one party's view of the will of the testator, which is best honored by open and honest examination. Nor is the argument persuasive that "frivolous" claims would consume the estate. There are remedies for those who would pursue frivolous claims, and to assume that they would be allowed is to promote an unprofessional if not unethical view of attorneys and judges.