HIGGINS, Justice.
 

 The ’plaintiff instituted’ this action for damages in the sum of $2,346.80 against the defendants, Collord Motors, Inc., and the General Finance Company of Louisiana, Inc., in solido, alleging that their agents and representatives conspired to wrongfully deprive him of his Dodge automobile and $586.80 cash, representing the consideration for the purchase price of a new Plymouth four-door sedan; that the defendants recklessly held out James L. Evans (proprietor of the Evans Sales Company), an irresponsible and dishonest automobile dealer, as their agent, thereby placing Evans in a position to defraud him of his above described property; and that thereafter defendants, as a result of the manipulations between themselves and Evans, illegally seized and sold the Plymouth sedan in foreclosure proceedings, under an alleged chattel mortgage. The plaintiff also claims the sum of $1,000 for the embarrassment, humiliation and injury he suffered because of the unlawful seizure of the Plymouth sedan, and $300 for his illegal deprivation of its use. He further alleges that for a paltry considera
 
 *574
 
 tion of a $50 check, he was induced to sign a release of the Plymouth automobile in favor of the alleged foreclosing creditor, upon the misrepresentations by its representative that the purported chattel mortgage had been recorded prior to the time of the sale of the Plymouth sedan to him on December 9, 1938.
 

 The defendants separately filed exceptions of vagueness, of no right and no cause of action, of misjoinder of parties defendant, and an exception as a bar to plaintiff's right to recovery based upon the alleged compromise with the plaintiff. The exceptions were argued before one of the judges of the Civil District Court and several months later he referred the one founded upon the compromise agreement to the merits, and overruled all of the remainder of them. Each defendant then filed a separate answer, reserving the benefits of the exceptions, denying the allegations of the plaintiff’s petition, and specially pleading the compromise agreement in bar to the plaintiff’s right to recover, denying that it was obtained by .misrepresentation.
 

 On the day the case was set for trial on the merits, before another judge of the Civil District Court, and after the plaintiff had taken the stand and started to testify, the defendants’ attorneys requested permission to reargue the exceptions. After granting this request the trial judge stated that he would reserve his ruling thereon until after he heard the evidence. Counsel for the defendants, under their exceptions, objected to the introduction of any testimony by the plaintiff. The plaintiff tendered the uncashed $50 chock to the defendants and the radio that had been placed in the Plymouth automobile at his own expense, both of which were recited as the consideration for entering into the alleged release or. compromise agreement. The defendants refused this tender.
 

 After hearing the evidence, the district judge overruled all of the exceptions and found that the sale of the Plymouth automobile was completed between the Evans Sales Company and the plaintiff on December 9, 1938, at 11:30 a. m.; that delivery of the automobile was. made to the plaintiff on the above date and hour in the Parish of Orleans; that the recordation of the chattel mortgage took place subsequently on the same day or at 1:50 p. m. in the Parish of Orleans; that the chattel mortgage was not recorded in the Parish of Plaquemines until April 27, 1939, or one day after the* seizure of the Plymouth automobile was effected thereunder, in the foreclosure proceedings; that, as the plaintiff was an innocent purchaser in good faith for value, prior to the recordation of the chattel mortgage in Orleans and Plaquemines Parishes, the mortgage did not affect the plaintiff’s automobile; that the release of the automobile by the plaintiff for the check of $50, and the return of the radio was not binding upon him because he was misled by the repeated statements of the defendant Finance Company’s representative made in good faith that the chattel mortgage had been properly and timely recorded, and having relied upon these erroneous statements the plaintiff acted to his detriment and to the Finance Company’s advantage; that the plaintiff’s Plymouth car was il
 
 *576
 
 legally seized by the foreclosing creditor, the General Finance Company of Louisiana, Inc., and the plaintiff was entitled to recover damages in the full sum of $1,-046.80, representing the trade-in value of the plaintiff’s Dodge automobile, i. e., $460, and the cash consideration of $586.-80; and that the evidence showed that the Collord Motor Company’s representative was free from any wrongdoing in causing the plaintiff’s loss and that the suit should be dismissed as to it. Judgment was rendered accordingly. The Finance Company appealed suspensively from this judgment and the plaintiff answered the appeal asking that the amount of the award of damages be increased.
 

 In this Court, counsel for the defendant Finance Company reargued the exceptions.
 

 The exceptions of vagueness and no right and no cause of action are without merit, because the petition in rather great details sets forth the alleged transaction from the beginning to the end. Accepting the allegations of the petition as being true, which we are required to do in order to consider the exceptions, the plaintiff unquestionably alleged a right and a cause •of action.
 

 With reference to the exception of misjoinder of parties defendant under the allegations of the petition, the two corporations were proper parties because the petitioner charged that their representatives conspired to wrongfully deprive him ■of his property and recklessly permitted this to"be done by holding out a dishonest and irresponsible person as their agent, and leading him to believe that he was dealing with their representative upon whom he could rely. The petitioner also charged that the defendants, as a result of their deceptive actions and relations with Evans, illegally seized and sold his automobile.
 

 As to the exception that the alleged compromise agreement was a bar to the plaintiff’s right to recover, the record shows that the plaintiff, in his petition, attacked the validity of this so-called release or compromise agreement on the ground of misrepresentation. The defendants then specially pleaded, by way of exception, the compromise agreement in bar. The exception was heard by two district judges who refused to sustain it, and the defendants, in their answers, again specially pleaded the compromise agreement in bar, denying that it was obtained by misrepresentation.
 

 Conceding that plaintiff’s attack in his petition upon the compromise agreement on the ground of misrepresentation is a collateral and not a direct one, but without deciding that issue, a view most favorable to the defendant Finance Company, let us consider whether or not it is entitled to have this suit dismissed and the plaintiff relegated to an action for the annulment of the alleged compromise agreement before suit can be brought for damages.
 

 In the case of Russ v. Union Oil Company, 113 La. 196, 36 So. 937, 940, the plaintiff instituted a suit for damages for personal injuries against his employer, without alleging that the claim had been previously compromised but that the compromise agreement had been obtained by
 
 *578
 
 coercion. The defendant excepted on the ground that the parties had entered into a compromise agreement of the matter. The exception was overruled and the defendant answered denying liability and pleading contributory negligence., There was an award in favor of the plaintiff for the sum of $425 and the defendant appealed. The plaintiff answered the appeal and asked that the award be increased. In considering the testimony as to whether or not the compromise agreement was freely entered into and not induced by coercion of the defendant’s agent, the Court concluded that the plaintiff had voluntarily entered into the compromise agreement and that it was binding upon him, and stated: “In the instant case the collateral attack has been made and met, and no good purpose would be subserved by relegating the parties to further litigation.”
 

 In the present case, the attack was made upon the compromise agreement in the plaintiff’s petition and testimony and was met by the defendants in their pleadings and evidence. The parties to the agreement here, as in the above case, are before the court and no useful purpose would be served by compelling them to go through an annulment proceeding when the record is now fully made up and the evidence on the issue has been presented on both sides. The only effect of maintaining the Finance Company’s position would be to further extend and delay the litigation.
 

 On the merits the record shows that the plaintiff is a retired railroad engineer living in Algiers, the Fifteenth Ward of the City of New Orleans, La., in which city the Collord Motors, Inc., and the General Finance Company of Louisiana, Inc., are doing business as an automobile dealer and a finance company, respectively; that about two weeks prior to December 9, 1938, when C. E. Stovall, an automobile salesman connected with the Dawes Motor Company, doing business as a Dodge automobile dealer in Algiers, solicited the plaintiff to purchase a new Dodge automobile, the plaintiff stated that he was interested in a Plymouth Sedan; that Stovall then took the matter up with James L. Evans of the Evans Sales Company (Plymouth Dealer) of Port Sulphur, Plaquemines Parish, La.; that these two men went to the home of the plaintiff on the morning of December 9, 1938, and appraised his 1935 Dodge automobile for $460, as a trade-in allowance on a new Plymouth Sedan; that as the Evans Sales Company had on hand, at the Collord Motors Company’s storage shed in New Orleans, four new Plymouth automobiles, the plaintiff accompanied the parties there and selected the Plymouth sedan in question; that he requested that his wife and family be permitted to see the car and the parties drove it to Algiers where the sale was completed for the stun of $1,046.80, representing the $460 allowance for the Dodge car and $586.80 to be paid in cash; that the plaintiff’s Dodge car was then turned over to Stovall and the Plymouth sedan was delivered by Stovall to the plaintiff at 11:30 a.m., December 9, 1938; that Stovall suggested that the plaintiff have the Dawes Motor Company service the Plymouth car before using it and the plaintiff had the car sent to the Dawes Motor Company for that purpose; and that on the next day, December 10, 1938, the Dawes Motor Company returned the Plymouth can
 
 *580
 
 to the plaintiff and Stovall then collected the $586.80 cash, the balance due thereon.
 

 It appears that on December 5, 1938, the Evans Sales Company through its duly authorized agent, James L. Evans, a resident of Port Sulphur, Louisiana, purchased from the Collord Motors Inc. four new Plymouth automobiles and, as it did not have the cash to pay for them, it mortgaged these four cars to the General Finance Company of Louisiana, Inc. for the sum of $2,725.85. The Finance Company made its check for that sum payable to the Collord Motors, Inc., and that company deposited the check to its credit. 'The Evans Sales Company sold three of the Plymouth cars and the Finance Company’s chattel mortgage was satisfied and released insofar as these three cars were concerned but James L. Evans, upon receiving payment for the Plymouth car sold to the plaintiff, failed to pay the mortgage note of the Finance Company and have the automobile released. Ke absconded and has not been located. The Finance Company did not record the chattel mortgage in the Parish of Orleans until December 9, 1938, at 1:50 p.m., and in Plaquemines Parish on April 27, 1939. On April 26, 1939, the Finance Company, in the foreclosure proceedings on the chattel mortgage against the Evans Sales Company and James L. Evans, seized the Plymouth car at the plaintiff’s home in Algiers. The civil sheriff, upon plaintiff’s complaint that he had fully paid for the car and had no notice or knowledge whatsoever that it had been mortgaged, was advised to take the matter up with the Finance Company’s representative. Acting upon this suggestion, the plaintiff found that he favorably and well knew the party representing the Finance Company and upon being assured that the chattel mortgage had been properly and timely recorded, offered to pay the Finance Company $250, which offer was declined. Several days later, the plaintiff, with his second cousin, a young attorney, returned to the Finance Company’s office for another conference, and its representative again stated that the chattel mortgage had been properly recorded prior to the time that the plaintiff purchased the Plymouth car and, therefore, his rights were unquestionably subordinated to those of the Finance Company. The plaintiff then offered the sum of $500, in compromise. The Finance Company again refused the offer. A counteroffer of • $751 was made by the Finance Company and the plaintiff declined this proposition. The representative of the Finance Company then suggested that as the prior recorded chattel mortgage primed the plaintiff’s rights and his cause was hopeless, the company was willing to give him $50, the amount it would cost them to have the car released from the sheriff by legal process, and the plaintiff’s radio which had been installed in the automobile, if he would surrender and abandon his rights in the Plymouth sedan. Acting on the erroneous information that the chattel mortgage had been recorded prior to the time that the plaintiff purchased the automobile from the Evans Sales Company, the plaintiff signed the release and authorized the sheriff to deliver the automobile to the Finance Company. The plaintiff did not cash the $50 check. Upon consulting his present attorney with refer
 
 *582
 
 ence to the matter, an investigation was made of the chattel mortgage records of the Parishes of Orleans and Plaquemines, and the plaintiff then learned for the first time, that the chattel mortgage upon the Plymouth automobile, had been recorded, after the date upon which he had purchased it. Thereupon he instituted the present suit.
 

 Our learned brother below concluded that the sale of the Plymouth automobile by the Evans Motor Company to the plaintiff was consummated on December 9, 1938, by the delivery of the same to him at 11:30 a., m. His opinion in this respect is based upon the uncontradicted testimony of Stovall and the plaintiff that the sale was completed at that time. Consequently, the plaintiff’s rights as an innocent purchaser for value of the automobile were not af- _ fected by the Finance Company subsequently, at 1:50 p.m., on December 9, 1938, recording the mortgage in the Parish of Orleans. The record in this case shows that the Evans Sales Company and James L. Evans were domiciled in the Parish of Plaquemines on December 5, 1938, the date that the chattel mortgage was placed on the four automobiles, including the one in question, and that the mortgagors thereafter were domiciled in Plaquemines Parish until Evans absconded. Furthermore, the chattel mortgage contained a provision, which required the mortgagors, to locate and keep the motor vehicles at Port Sulphur, Parish of Plaquemines.
 

 Under the provisions of Act 198 of 1918, as amended by Section 1 'of Act 178 of 1936, in order for a mortgage to affect third persons without notice, it should be recorded in the place where the act of mortgage is executed and also in the Parish of the domicile of the mortgagor.
 

 In the case of General Finance Company of Louisiana, Inc., v. James L. Evans et al., La.App., 196 So. 581, the plaintiff corporation, which is also the defendant herein, instituted foreclosure proceedings against the defendants under a chattel mortgage for $282.50, dated December 27, 1938, and duly recorded in the Parish of Orleans, but not recorded in the Parish of Plaquemines until after the Evans Sales Company had sold the car to W: P. Veron, the intervenor, an innocent purchaser, without knowledge or notice. The intervener claimed, when the sheriff seized the automobile, that the mortgage did not affect his car because the plaintiff had failed to comply with the chattel mortgage statute, Act 198 of 1918, as amended by Act 178 of 1936, by recording the mortgage in the Parish of Plaquemines, the domicile of the mortgagors, before he purchased the automobile. The trial judge held that the chattel mortgage was ineffective against the intervener’s automobile because of lack of timely recordation of the mortgage at the domicile of the mortgagors and dismissed the plaintiff’s claim for a lien and privilege thereon, ordered the sheriff to restore the automobile to intervener’s possession, and reserved his right to recover such damages as he might have sustained as a result of the wrongful seizure. On appeal, the Court of Appeal, on June 13, 1940, concluded that the Evans Sales Company and James L. Evans were domiciled in the Parish of Plaquemines and that the chattel mortgage statute required the mortgage cred
 
 *584
 
 itor to record the chattel mortgage in that Parish before it could affect the rights of innocent third persons. The court also held that as Evans’ authorization to enter into the mortgage in behalf of the Evans’ Sales Company was not in authentic form, the plaintiff was not entitled to proceed via executiva.
 

 In the light of the above authority, as the mortgagors in this case were domiciled in the Parish of Plaquemines on December 5, 1938, the day on which the chattel mortgage was executed, under the plain provisions of the chattel mortgage law, the mortgage should have been recorded in that Parish before it could affect the rights of innocent third persons.
 

 It is our opinion that
 
 the
 
 plaintiff having purchased for value the Plymouth automobile without knowledge or notice of the chattel mortgage and before the recordation thereof, the chattel mortgage was ineffective and not binding upon him and that he purchased the automobile free of it. Therefore, the seizure of the plaintiff’s Plymouth automobile was illegal.
 

 With reference to the special defense of the alleged compromise agreement, there is considerable doubt as to whether or not the parties intended that it should cover plaintiff’s rights to recover damages for the wrongful and illegal deprivation of his property by the defendants, as the document has the appearance of being only a release of the car. Conceding, however, that it was a compromise agreement, which would cover plaintiff’s present claims, he attacked the alleged release or compromise agreement on the. ground of- misrepresentation. The trial judge was of the opinion that the evidence showed that the plaintiff had been misinformed by the Finance Company’s representative that the mortgage had been properly recorded prior to the time that he purchased and accepted delivery of the automobile, and, acting upon this erroneous statement of fact, he signed the so-called compromise agreement and would not have done so had he been apprised of the true facts with reference to the recordation of the chattel mortgage. It is our view that the evidence supports the trial judge in reaching this conclusion.
 

 Counsel for the Finance Company has referred us to the case of Millaudon v. Worsley et al., 6 Rob. 274, as being in point and decisive of the compromise issue herein. In that case, the plaintiff sued the defendants as endorsers on a note. They pleaded error and want of consideration. It appeared that the plaintiff owned a store which he had rented to a man by the name of Sully, who subleased it to the defendants. Sully owed back rent. The defendants began to remove some of their goods from the store under the erroneous impression that because of the structure of the building they were unable to get fire insurance coverage. The plaintiff prevented the completion of the removal by provisionally seizing the goods for the rent due by Sully. In order to .obtain the release of the goods from seizure, the defendants agreed to endorse Sully’s note (representing rent), upon which the suit was based. The Court found that the defendants had endorsed the note by way of compromise to put an end to the suit and to secure the release of their property
 
 *586
 
 from the seizure. The mere fact that they committed an error of law in thinking that their property was subject to a lien for the rent, the Court said, would not absolve them from their obligations under the compromise, particularly as they had secured the benefit of having their property released from the seizure and thereby deprived the plaintiff of his right to have the matter fully contested in the court.
 

 The above case is not controlling here for the following reasons: (1) In the instant case the error was one of fact induced by the defendant’s misrepresentations and not one of law; (2) in the instant case the plaintiff did not secure the release of his property by the alleged compromise agreement but surrendered it to the chattel mortgage creditor who had it sold and secured the full benefit therefrom; and (3) plaintiff tendered to the defendants the consideration for the compromise.
 

 Counsel for the Finance Company states that in the event the Court concluded that there was liability, his client was entitled to a reduction of the amount awarded by the trial judge, because of the failure to allow for depreciation on the Plymouth automobile during the period of more than four months in which it was being used by the plaintiff. There is no testimony in the record to show that the automobile did depreciate in value and, if so, to what extent. Consequently, we cannot assume that there was depreciation on the automobile and if so, by mere conjecture approximate the extent thereof.
 

 The plaintiff has answered the appeal and asked that the award be increased because the trial judge failed to allow him damages for the loss of the use of the automobile and for the humiliation, embarrassment and injury occasioned by the illegal seizure. The uncontradicted testimony shows that the sudden and unexpected seizure of the automobile from plaintiff’s home aroused considerable excitement in his household and in the neighborhood and caused him to be very much upset and disturbed. Furthermore, to his embarrassment and humiliation friends and acquaintances made a number of inquiries as to whether the plaintiff had purchased a “hot” automobile.
 

 For the inconvenience and loss of the use of the car as well as the humiliation and embarrassment caused by its illegal seizure, we are of the opinion that the plaintiff is entitled to the sum of $250.
 

 For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the district court is amended by increasing the amount awarded from the sum of $1,046.80 to $1,296.80, with legal interest thereon from judicial demand until paid, and for all costs of court, and, as thus amended, the judgment is affirmed.