HARDY, Judge.
This is a suit instituted by plaintiff, United Novelty Company, Inc., a Mississippi corporation authorized and doing business in the State of Louisiana under the trade name of Dixie Coin Machine Company, seeking judgment against the three named defendants doing business as DRS Amusement Company, in the sum of $3,444.78, together with interest and attorney’s fees. Plaintiff' claims the amount set forth as the holder and owner of certain promissory notes and accounts, and seeks further judgment recognizing, maintaining and enforcing its special lien, privilege and mortgage on movable property, consisting of six automatic music machines. After trial there was judgment in favor of plaintiff for the full amount claimed, subject, however, to the denial of interest and attorney’s fees on the sum of $1,912, liability for which had been admitted by defendants. From this judgment defendants have appealed and plaintiffs have answered the appeal, praying for an amendment of the judgment to the extent of the allowance of interest and attorney’s fees on the total amount claimed.
Notwithstanding the fact that the judgment in this case is for an amount which far exceeds the jurisdiction of this court, and that a suspensive appeal bond in the sum of $5,800 was fixed and filed herein, we have retained jurisdiction, in view of defendants’ admission in answer to plaintiff’s demands, of an indebtedness to the extent of $1,912, which reduced the amount in dispute to $1,532.78. The effect of such an admission with respect to jurisdiction is clearly set forth in the opinion of the late Chief Justice O’Niell, citing a long line of authorities, in State v. Cook, 197 La. 1027, 3 So.2d 114, 117, in the following words:
“It is the subject matter that is in contest before and at the time when the judgment is rendered in the court of original jurisdiction that determines what court if any has appellate jurisdiction in a given case. A remittitur or an acquiescence or admission made after the court of original jurisdiction has rendered its judgment, or the elimination of one of the issues in the case after the court of original jurisdiction has rendered its judgment, does not affect the question of appellate jurisdiction over the case. Norwood v. Lake Bisteneau Oil Co., 145 La. 823, 83 So. 25. But a payment made or a remittitur entered, or an admission of a part of the debt sued for, before the case is submitted to the court of original jurisdiction for decision, has the same effect upon the question of appellate jurisdiction as if the amount paid or remitted, or the amount of the debt admitted, had never been sued for.”
The record before us is devoid of any written transcript of testimony, but in accordance with the provisions of Article 602 of the Code of Practice a full statement of facts agreed upon by counsel for the parties litigant has been filed herein.
*811 The pertinent facts are that by bill of sale executed January 24, 1950,- Grover C. Kirksey sold to the defendants herein six automatic music machines, the consideration recited being $1,700 cash and the assumption of chattel mortgage indebtedness. Since it is the interpretation of the assumption clause in the said instrument which must be primarily considered in a determination of the case, we quote herewith the provisions of said clause as it appears in the act of sale:
“It is understood and agreed 'between the parties hereto that there exists a chattel mortgage indebtedness against all of the movables herein described amounting to the approximate sum of Two Thousand and No/100 ($2,000.00) Dollars; and the vendees herein declared that they hereby accept title to the property herein conveyed subject to said chattel mortgage indebtedness against said movable property, and agree and obligate themselves to pay said mortgage indebtedness according to the terms and conditions of such contract of chattel mortgage resting against the property herein described.”
On the day before the deal with Kirk-sey, at the request of defendants their attorney made an examination of the chattel mortgage records of East Carroll Parish, from which he determined the existence of two recorded chattel mortgages affecting four of the machines involved. The principal sums of these recorded mortgages totaled $1,912.64, which is the full amount for which liability is admitted by these defendants. The attorney requested a chattel mortgage certificate from the Clerk of Court and Ex-Officio Recorder of East Carroll Parish, which certificate, furnished on February 16, 1950, attested the recor-dation in the office of the clerk and recorder for the parish of the two mortgages in the aggregate principal amount above set forth.
Further, at the request of defendants, on February 2, 1950, their attorney directed a letter to the plaintiff, the body of which reads as follows:.
“The DR.S Amusement Company of Lake Providence, Louisiana, composed of Salvador Salemi, Henry Dalfiume and Paul Rosenzweig, purchased the following described automatic music machines on January 24, 1950 from Grover C. Kirksey and obligated themselves to pay any indebtedness presently resting against the machines.
“They were informed by Mr. Kirk-sey that the machines were purchased from your company. Please send us an itemized statement of the balance due on the following machines:” (followed by a description of the six music machines involved).
On February 9, 1950, plaintiff answered the above quoted letter, advising that they held three chattel mortgages upon the machines described and one open account, all of which totaled the principal sum of $3,-444.78, exclusive of interest, attorney’s fees, etc. The third chattel mortgage, under which plaintiff’s claim, was unrecorded in East Carroll Parish, was dated September 26, 1949 and recited the indebtedness secured therein as the amount of $1,-382.14. The open account which affected one of the six machines was described as being in the amount of $350.
Upon receipt of the above information vendees promptly instructed their attorney to inform plaintiff that they would not pay the amount represented as being the total indebtedness, inasmuch as they were advised by their vendor, which advice was confirmed by an examination of the public records of East Carroll Parish, that the indebtedness upon the machines approximated the sum of $2,000. On February 15, 1950, defendants were contacted by an agent of plaintiff who demanded payment of the full amount of $3,444.78, in answer to which demand defendants offered the sum of $1,912 in full payment of their acknowledged liability, which offer was refused. On June 14, 1950 plaintiff recorded the third chattel mortgage in the records of East Carroll Parish. This suit was filed on .November 9, 1951.
The defense interposed herein is obvious. Defendants, consistently admitting liabil *812 ity to the: extent of $1,912.64, urgently contended that they were innocent purchasers without notice of the encumbrances evidenced by the unrecorded chattel mortgage and the claim on open account, as a consequence of which they were not liable.
In setting forth his reasons for judgment the district judge, in support of his conclusion, made the following statement:
■ “If .the defendants could prove by proper testimony that they had .no knowledge of these encumbrances, unrecorded in this parish, and that they purchased the equipment under the impression that they were securing a clear. title, the provisions of the law relative to recordation might then apply and (>b) invoked to absolve them from responsibility.”
The trial judge then proceeded to express the opinion that defendants did have knowledge of the unrecorded encumbrances, predicating this finding primarily upon his interpretation of the assumption clause in the act of sale and the recital in the letter of defendants’ attorney that the said defendants “obligated themselves to pay any indebtedness presently resting against the machines.”
 It is apparent from the above observation of the learned district judge that he considered the burden of proof to rest upon defendants. In this we think, he ¡erred. ■ It has long been established by our 'jurisprudence that chattel mortgages, being in derogation of common rights, are to be strictly construed and that the statutory provisions for the execution and recordation of such instruments are to be rigidly enforced. A clear and succinct statement of this principle is to 'be found in the opinion of the late Judge Taliaferro of this court in Smith v. Bratsos, La.App., 12 So. 2d 241, 243, (certiorari granted and judgment of the Court of Appeal reversed on other grounds, 202 La. 493, 12 So.2d 245). The principle was reiterated in the following languagé of the opinion:
“To bring into existence the lien and privilege established by the statute, strict compliance with its requirements must be pursued. Such liens and privileges, it is uniformly held, are stricti juris. All prerequisites to their birth must be strictly observed. This principle is firmly imbedded, in the jurisprudence of this state since legalization of chattel mortgages. Peoples Homestead & Savings Association v. Cann et al., La.App., 180 So. 197; Valley Securities Co., Inc. v. De Roussel, 16 La.App. 115, 133 So. 405;. Consolidated Companies v. Laws, 11 La.App. 676, 124 So. 775; New Way Family Laundry, Inc. v. Lebo, 16 La.App. 157, 133 So. 463.”
The latest statutory provision affecting the question of notice to third parties is set forth in Section 4 of Act 172 of 1944, now LSA-R.S. 9:5354,, as follows:
“Every such mortgage, shall be effective as against third persons from the time of the filing in the proper offices, and the filing shall be notice to all parties of the existence of the mortgage, which shall be superior in rank to any privilege or preference arising subsequently thereto.”
Our jurisprudence is replete with pronouncements to the effect that third parties are charged with liability, in the absence of proper recordation of the chattel mortgage, only by actual knowledge of the existence thereof, Hindelang v. Collord Motors, 200 La. 569, 8 So.2d 600; Southern Enterprises, Inc. v. Foster, 203 La. 133, 13 So.2d 491, 494.
In the last cited case the opinion .points out the conclusion that one of. the objects of the chattel mortgage statute is to prescribe the method by which it is to be made effective “* * * not as between the original parties, but as against all other persons within the State who are without notice of the existence of the instrument.”
The opinion further noted that third persons without actual knowledge cannot be held to have constructive notice in the absence of strict compliance with the statutory requirements.
*813 The obvious distinction intended by the provisions of the chattel mortgage statute is the intention that the provisions of such a mortgage shall be binding as between the parties thereto as and from the proper execution of such instrument, but that it is 'binding upon third persons only from and after the proper filing and re-cordation thereof. Harris Finance Corp. v. Fridge, 219 La. 1106, 55 So.2d 707, affirming judgment of the Court of Appeal, First Circuit, in the same case, 47 So.2d 414.
In the light of these legal principles it is necessary to undertake the consideration of the facts involved in the instant case.
It is obvious that the assumption clause incorporated in the act of sale between Kirksey and these defendants is ambiguously worded. It may be construed either as an assumption of all existing indebtedness or as a limitation of such assumption to the approximate amount of $2,-000. In view of this uncertainty, ambiguity and lack of precise wording it is necessary that we examine all other facts and circumstances which may throw a light upon a proper resolution of the question as to the actual knowledge, vel non, of the unrecorded encumbrances on the part of these defendants.
We are not greatly' impressed by the argument of plaintiff’s distinguished counsel to the effect that their contention of actual knowledge on the part, of defendants is substantiated by the letter of defendants’ attorney to plaintiff of February 2, 1950. In connection with the effect of the declarations in this communication, we note from the statement of facts, the attorney in question testified that .the unrecorded chattel mortgage was never discussed in his presence, that he had no personal knowledge of its existence, and that his examination of the public records of East Carroll Parish disclosed the existence of only two chattel mortgages, the total face value of which approximated the sum of $2,000.
True it appears from the same statement of facts Kirksey testified that “ * * * there was an open account due on one of the machines and a balance due on all machines between $2,600 and $2,700.”
The Kirksey testimony can hardly be considered as sound support for the finding urged by plaintiff. In his opinion the district • judge made • the following comment :
'“Mr. Kirksey was rather vague and indefinite in his testimony relative to these mortgages and the amounts due thereunder. Evidently he was just as vague and indefinite in 'his statements to defendants and the attorney.”
This same nature of evaluation of Kirk-sey’s testimony is pointed out in the statement of facts by the following comment:
“Kirksey was evasive in his answers ■ and could not account for the fact that the limitation clause of the sale contract limited the vendee’s assumption to $2,000.00, despite the fact that the sale instrument was read to him before execution and signed by him as the vendor therein.”
One of the defendants, Dalfiume, testified that he had knowledge of an open .account against one of the machines in the amount of $350, but believed this sum was included in the $2,000 amount which Kirksey advised was the approximate balance due on the music machines.
Our appreciation of the facts leads us to the conclusion that plaintiff has failed to establish by ány sort of "preponderance of the evidence, that defendants had actual knowledge of the existence of any indebtedness against the property concerned which exceeded the approximate amount of $2,-000. We are further supported in this conclusion by reference to the provisions of the three chattel mortgages which are included in the record before us. Examination of these instruments discloses a total recited purchase price for the five new machines as amounting to $4,848.92. If plaintiff is correct in its contentions and these defendants had knowledge of the existence of all the encumbrances against these machines and intended to assume the same *814 in addition to the cash payment to Kirk-sey of $1,700, then it .would appear that defendants engaged themselves for a total consideration of $4,794.84 for the purchase of five second-hand music machines which they could have bought new for an additional consideration of only' $54.14. From a practical viewpoint such a conclusion would appear to be unreasonable and unjustified. In these calculations we 'have eliminated from consideration the open account item of $350.
Finally we observe that plaintiff’s counsel in brief urges the liability of defendants under the provisions of the Bulk Sales Law as set forth in LSA-R.S. 9:2961 et seq.
In support of this contention counsel states that Kirksey sold and conveyed to the defendants all of the music machines used in the business of the said Kirksey and therefore the transfer is- one regulated by the provisions of the statute set for. Careful examination of the record fails to substantiate this argument. There is no indication in the act of- sale itself that the property conveyed constitutes all or any part of a stock of merchandise, fixtures or equipment used by Kirksey in the conduct of his regular and usual course of business. The instrument simply describes the six music machines affected. Nor is there any indication in the statement of facts agreed upon by counsel for the parties litigant which would support the contention made. The only declaration in such statement even remotely connected with this proposition is that Kirksey sold six automatic music machines. Nor does it appear from any of the pleadings in the case that the property purchased by defendants was susceptible to the provisions of the bulk sale law. Under these circumstances it can only follow that the charge of violation of the. Bulk Sales Act and the consequent liability of defendants has failed.
We note that the district judge construed defendants’ admission of liability, to the extent set forth, as constituting a legal tender relieving defendants of subsequent charges and costs. We think such a construction was erroneous in view of the provisions of Article 155 of the Code of Practice which reads, in part, as follows:
“ * * * the defendant shall pay the costs, unless he prove that, previous to the suit, he made a real offer of the amount actually due to the plaintiff, with the interest and the costs which had accrued.”
We do not find that the record supports a real offer within the above provision, and it follows that plaintiff is entitled to judgment thereon.
For the reasons assigned the judgment from which appealed is amended by, reducing the amount thereof from the principal sum of $3,444.78 to the full sum of $1,912.-64, together with interest at the rate of 6% per annum from date of January 25, 1950, until paid, together with attorney’s fees of 15% upon the said amount, principal and interest.
The judgment is further amended by restricting the recognition and maintenance of plaintiff’s special lien, privilege and mortgage and the sale by the Sheriff to the property described in the mortgages herein recognized and enforced by this judgment against defendants.
It is further decreed that costs of this appeal be assessed against plaintiff and all other costs against defendant.