70 So.2d 189 (1953)
CHAPIN
v.
FEDERAL TRANSPORTATION CO. et al.
No. 3763.
Court of Appeal of Louisiana, First Circuit.
December 18, 1953.
*190 J. Minos Simon, Lafayette, for appellant.
Plauche & Plauche, Lake Charles, for appellees.
ELLIS, Judge.
This is a suit seeking damages for personal injuries sustained by the plaintiff in an automobile accident. The suit was brought in forma pauperis against the defendant, its agent, who was driving its vehicle at the time of the accident, and its liability insurer.
The action sounds in tort and the petition contains the usual allegations, but further refers to an act of compromise settlement or release held by the defendants which the petition alleges is a forged document if plaintiff's signature is affixed thereto; and that if the document bears his genuine signature, then the instrument is invalid on account of alleged mental incapacity, deceit on the part of defendant's agent, and other related or similar vices of consent.
The defendants filed exceptions of no right or cause of action to bring this action for damages in this manner, contending that a separate action must be brought to rescind or annul the compromise settlement and successfuly prosecute such action of nullity; and further, in the alternative, in the event the Court will permit the action as filed to present the question raised, that the defendants are entitled to a separate hearing in advance of a trial upon the merits, of their pleas of res judicata and estoppel, based upon the alleged binding effect of the compromise settlement and release. No testimony was offered by the defendants upon their exception of no right of action.
The District Court sustained the exception of no right and no cause of action, dismissing plaintiff's suit as in the case of non-suit, using the following language:
"Since the court is of the opinion that the exception of no right and no cause of action filed by defendants is valid and should be sustained, no purpose would be served by discussing the other pleas and exceptions filed by defendants.
"For the reasons assigned the exception of no right or cause of action *191 is maintained and plaintiff's suit is dismissed at his costs as in the case of non-suit."
From this judgment the plaintiff has appealed.
A motion to dismiss the appeal was filed, but has since been abandoned.
From an examination of the pleadings and the judgment of the District Court it becomes apparent this Court must decide two questions:
1. Does the petition disclose and express a direct attack upon the validity of the purported instrument of compromise?
2. If so, can such an action be cumulated with an action for damages in tort?
Aside from the usual allegations found in a tort petition, Articles VI, VII, and VIII of plaintiff's petition read as follows:
VI.
"Petitioner is informed, believes, and therefore avers that the defendants herein have an instrument purporting to be a release agreement executed by your petitioner in favor of the defendants herein, whereby petitioner waived any and all rights or claims that he may have had against the defendants herein, as a result of the injuries sustained by him as hereinabove set forth, and resulting from the alleged collision. Petitioner further avers that if his signature is affixed to such a document then it is not his genuine signature, and furthermore, if it is his genuine signature, then the same was procured by deceit, imposition and misrepresentation, and at a time when petitioner was not possessed of his mental faculties sufficient to enable him to formulate deliberate thought or sensible reflection, and hence, unable to understand or reason, or otherwise think sanely.
VII.
"Petitioner further avers that two (2) or three (3) days subsequent to the incurrence of the injuries hereinabove complained of, your petitioner was requested to affix his signature to a document which your petitioner understood to be a receipt for the sum of Two Thousand, seven Hundred ($2,700.00) Dollars, which an agent gave to your petitioner as money to be used solely for the purpose of defraying petitioner's medical expenses, during his entire period of convalescense, under the following circumstances, to-wit:
VIII.
"Petitioner further avers that as a result of the collision hereinabove mentioned, he sustained all of the injuries hereinabove set forth, and furthermore, he was literally scalped, in that the skin on his head was cut from ear to ear, for all practicable purposes, and pulled backward over his head; that, he was furthermore rendered unconscious as a result of this collision, and suffered severe and lasting shock; that he, furthermore, experienced grave difficulties in breathing properly, in that he experienced an extreme and hazardous shortness of breath; that for several days subsequent to the incurrence of these injuries, petitioner spat up blood at frequent intervals; that immediately after the occurrence of the collision complained of, petitioner was brought to the Charity Hospital at Lafayette, Louisiana. That after the lapse of two (2) or three (3) days, petitioner became anxious over his critical condition; that his anxiety was augmented by the fact that he was among total strangers, and had no relatives or friends to attend to his wishes, or to otherwise comfort him; that because of his grave anxiety, the fact that he was spitting up blood, his fear inspiring difficulty to breathe, coupled with the torture of excruciating and unbearable pains and sufferings, your petitioner developed a frenzied fear of impending death, and could think of nothing other than getting out of the Charity Hospital and seeking out undivided professional *192 attention; petitioner had been neglected while at Charity Hospital and this neglect was magnified by his grave and unbearable pains and sufferings, all of which superinduced a condition of frantic fear for his life by remaining at the Charity Hospital any longer. That, furthermore, it was necessary to administer sedation to your petitioner at regular periodic intervals, in order to partically relieve his excruciating pains; petitioner further avers that it was at this time, when he was in such a state of mind and condition, that a representative of the defendants herein saw him at the Charity Hospital, and in talking to him, told him that he could have anything that he wanted by way of medical attention; petitioner, while in this state of frenzy and emotional instability, advised the defendants' agent that his immediate desire was to get out of the Charity Hospital, and into the hands of private professional people, and then asked if the defendants could arrange to supply him with enough finances for the purpose of defraying all of his future medical expenses, arising out of his future treatment, during his convalescense; that soon thereafter, the agent returned with cash in the sum of Two Thousand, seven hundred ($2,700.00) Dollars, and gave it to your petitioner, requesting that your petitioner sign a receipt therefor; that your petitioner, while suffering untold tortures, and while his mental faculties were abused by a fanatical fear of losing his life, and the impairing effects of sedation, and not fully appreciating the meaning or significance of his actions signed the document without reading it, and certainly without knowing that it contained anything to the contrary of what he had orally requested of the defendants' agent; that by registered mail, dated April 26, 1951, petitioner herein, through his counsel, tendered a return of this money, upon being advised by his counsel that the defendants took the position that your petitioner had actually executed a release agreement, whereby he waived any and all rights and causes of action, that he may have had against the defendants herein; petitioner, furthermore, at this time, repudiates said agreement, and avers that the same was obtained, if it does exist, by deceit, imposition, and misrepresentation, as hereinabove set forth."
The prayer of the petition, other than the usual tort prayer, prays "that said alleged agreement be declared a nullity."
The plaintiff maintains that through the petition and prayer he has directly and specifically attacked the validity of the compromise settlement, but he has cumulated his direct attack upon its validity with an action in tort for damages.
On the other hand the defendants vigorously contend this is not a direct action but a collateral attack, and a distinct and separate action must be taken by the plaintiff to rescind the compromise and until this is done the settlement is binding and cannot be so attacked.
The pertinent Articles of our LSA-Civil Code covering transactions or compromise are:
"3071. A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
"This contract must be reduced into writing."
"3078. Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.
"3079. A transaction may be rescinded notwithstanding, whenever there exists an error in the person or *193 on the matter in dispute. It may likewise be rescinded in the cases where there exists fraud or violence."
Our jurisprudence holds that where a compromise or settlement is not an absolute nullity it cannot be attacked collaterally, but a direct action is necessary to set it aside. See Succession of Rouse, 144 La. 143, 80 So. 229, and the various authorities cited therein. Also Bodcaw Lumber Co. of Louisiana v. Wallette, La.App., 19 So.2d 663.
Of course, the reason that a direct action is required is that Article 3078 of the LSA-Civil Code, supra, gives to a compromise or transaction the same force and attributes of a judgment of Court.
While this is true, we must, for the purpose of passing upon the exception, accept the allegations of fact contained in the petition as true. The allegations state the settlement was procured by deceit, imposition and misrepresentation, and at a time when the plaintiff was not possessed of his mental faculties sufficient to enable him to formulate deliberate thought or reason. Circumstances under which the signature was obtained are further set forth, which, if true, would void the compromise. Whether or not these allegations in the petition are true is a question of fact to be determined after the evidence is heard on this point.
"Consent" is required to make a transaction or compromise binding and not subject to attack. The following Articles of our LSA-Civil Code so provide:
"1797. When the parties have the legal capacity to form a contract, the next requisite to its validity is their consent. This being a mere operation of the mind, can have no effect, unless it be evidence in some manner that shall cause it to be understood by the other parties to the contract. To prevent error in this essential point, the law establishes, by certain rules adapted to the nature of the contract, what circumstances shall be evidence of such consent, and how those circumstances shall be proved; these come within the purview of the law of evidence.
* * * * * *
"1812. Express consent must be given in a language understood by the party who accepts, and the words by which it is conveyed must be in themselves unequivocal; if they may mean different things, they give rise to error, which, as is hereinafter provided, destroys the effect of a contract.
* * * * * *
"1824. The reality of the cause is a kind of precedent condition to the contract, without which the consent would not have been given, because the motive being that which determines the will, if there be no such cause where one was supposed to exist, or if it be falsely represented, there can be no valid consent."
Since the petition sets forth in rather extensive detail the circumstances surrounding the alleged compromise from beginning to end, accepting the allegations of the petition as being true, the plaintiff has alleged a right and a cause of action.
A similar petition was filed in the case of Lervick v. White Top Cabs, Inc., La. App., 10 So.2d 67. In that case, coupled with a tort action, the petition alleged the defendants were in possession of a document which purported to be a release or compromise. Exactly the same exceptions and pleas were filed therein as we find here. However, the trial Court after hearing, referred them to the merits, and upon trial rendered judgment dismissing the suit. The Appeal Court reversed this decision and the case is cited herein merely to show the sufficiency of allegations necessary to directly attack a compromise. Writ of certiorari was denied.
The pleadings in the Lervick case are strikingly similar to those in the present case. There was a tort action cumulated with the action for nullity of a compromise. It was alleged the defendants were in possession of a document purporting to be a *194 release, but that the plaintiff had no knowledge of this release and that the signature appearing thereon was a forgery, and in the alternative, that if the signature was genuine, it was obtained through misrepresentation, fraud and deceit and at a time when the plaintiff was not in full possession of his physical and mental capabilities. An answer was filed, but before a trial on the merits, the defendants plead estoppel and res adjudicata, and also filed an exception of no right or cause of action. The trial Court referred the pleas and the exception to the merits. The Appeal Court reversed the lower Court and gave judgment in favor of the plaintiff, holding the release relied upon by the defendants was not valid in that it was procured by an active and experienced agent of an insurance company while the plaintiff was in a physical and mental condition, unable to properly exercise the same care he would have under ordinary circumstances.
The defendants as well as the District Court have cited many cases to show it is obligatory to attack directly and separately a compromise or transaction. While we agree with these decisions, we feel they are inapposite in that they do not hold a separate action should be brought in any other manner than has been instituted by the plaintiff in the present case. Among the apparently stronger of these are Adle v. Prudhomme, 16 La.Ann. 343; Graham v. Hester, 15 La.Ann. 148; Massey v. W. R. Pickering Lumber Co., 136 La. 688, 67 So. 552; Succession of Rouse, 144 La. 143, 80 So. 229; Beck v. Continental Casualty Co., La.App., 145 So. 810; Hindelang v. Collord Motors, 200 La. 569, 8 So.2d 600.
The Prudhomme case, supra, while stating the general principle that a direct action must be brought, clearly shows that there was nothing in the pleadings or in the evidence attacking the compromise settlement. The Hester case was a petitory action and was instituted without even alluding to a previous compromise, and hence no attack whatsoever was made upon the transaction. In the Pickering case the Court held the settlement had not been assailed upon any ground, and there was no offer of tender made, and consequently there was no attack at all. The petition in the Rouse case did not even refer to a compromise which had been made and the Court concluded it would have to give effect to a compromise filed in evidence by the defendant until it had been directly attacked. In the Continental Casualty Co. case the Court stated positively that the plaintiff's petition did not even challenge the validity of a compromise agreement. In the Collord Motors case similar exceptions were filed as in the present case but were not sustained by the trial court and the cause went to trial. The Supreme Court used the following language [200 La. 569, 8 So.2d 602]:
"Conceding that plaintiff's attack in his petition upon the compromise agreement on the ground of misrepresentation is a collateral and not a direct one, but without deciding that issue, a view most favorable to the defendant Finance Company, let us consider whether or not it is entitled to have this suit dismissed and the plaintiff relegated to an action for the annulment of the alleged compromise agreement before suit can be brought for damages. (Emphasis added.)
* * * * * *
"In the present case, the attack was made upon the compromise agreement in the plaintiff's petition and testimony and was met by the defendants in their pleadings and evidence. The parties to the agreement here, * * *, are before the court and no useful purpose would be served by compelling them to go through an annulment proceeding when the record is now fully made up and the evidence on the issue has been presented on both sides. The only effect of maintaining the Finance Company's position would be to further extend and delay the litigation."
This last case does not substantiate the defendants' position.
Since Article 3078 of the LSA-Civil Code gives to a transaction or compromise the same binding effect as a judgment, the *195 same rules of pleading and practice would apply when it is attacked upon the ground of nullity as would apply in a suit to annul a definitive judgment. These rules are set forth in the Articles of the Code of Practice as follows:
"607. A definitive judgment may be annulled in all cases where it appears that it has been obtained through fraud, or other ill practices on the part of the party in whose favor it was rendered; * * *.
* * * * * *
"610. The party praying for the nullity of a judgment, before the court which has rendered the same, must bring his action by means of a petition; and the adverse party must be cited to appear, as in ordinary suits."
The plaintiff has filed such a petition herein, and has set forth a cause of action, and as set forth above, we conclude the petition expresses a right and a cause of action.
Article 148 of the Code of Practice states that: "Separate actions may be cumulated in the same demand, except in the cases hereafter expressed; this is termed cumulation of action."
Article 149 of the Code of Practice states: "The plaintiff is not allowed to cumulate several demands in the same action, when one of them is contrary to or precludes another. * * *"
It seems the compromise agreement and the tort action herein arose out of the same circumstance. The plaintiff contends the defendants violated a duty toward the plaintiff not to inflict injuries upon him, and also violated the duty owed, to deal fairly with him and not to take advantage of his position and circumstances when the compromise was effected.
Various decisions of our Courts have held such actions can be cumulated.
Burson v. Hamilton, 144 La. 46, 80 So. 194, concerned a cause where the plaintiff demanded one-half the value of a crop under a contract, and damages for violence used in violating the contract. An exception was filed to the right of the plaintiff to cumulate these actions. The Court held there was no inconsistency in the two causes of action.
In Reid v. Federal Land Bank of New Orleans, 193 La. 1017, 192 So. 688, the Supreme Court held an action to annul a judicial sale could be cumulated with a petitory action if all parties in interest were made parties to the suit. In this case the Supreme Court acknowledged that it was necessary to bring a direct action for the purpose of annulling a judicial sale, but the case holds that a plaintiff complies with that requirement when a direct action for annullment is cumulated with another incidental action.
The Reid case was followed by the Court of Appeals, 2nd Circuit, in Lacaze v. Hardee, 7 So.2d 719. The first petition in the Lacaze case was met with an exception, but the plaintiff amended the petition by pleading nullity of a previous adjudication of property for which title was sought. The Court held a direct action of nullity could be cumulated with a petitory action.
The law favors cumulation of actions in order to prevent multiplicity of suits. In Poole v. Merritt, La.App., 19 So.2d 641, 645, is found the following language:
"As to the question of the cumulation of causes of action, the law favors such cumulation in order to avoid the multiplicity of lawsuits, in the absence of the causes being contrary to or precluding the other or others."
It is clear that all of the parties at interest are before the Court and there has been, in our opinion, a proper cumulation of actions. The first is a direct attack upon the validity of the alleged compromise, the second is a claim for damages.
While we are aware that the defendants additionally contend that they are entitled to a separate hearing, under their pleas of res judicata and estoppel based upon the *196 alleged binding effect of the compromise and release prior to a trial upon the merits, as the lower court did not pass upon this plea we only have before us the validity of the judgment sustaining the exception of no right and no cause of action.
For the reasons given, it is ordered that the judgment of the District Court be reversed and the exception of no right and no cause of action be and the same is hereby overruled and the case remanded to the District Court for further proceedings in accordance with law.