GULOTTA, Judge.
This is an appeal from a judgment dissolving and setting aside a writ of sequestration on radio broadcasting fixtures and equipment in the possession of third party intervenor, Techeland Broadcasting Company. The judgment also dismissed defendants’ demand for damages and attorney’s fees as a result of the wrongful issuance of the writ; however, no appeal was taken from that part of the judgment.
The facts, not in dispute, are that Queen City Broadcasting Company, Inc., in liquidation, by act dated July 26, 1962, sold a radio broadcasting station together with fixtures and equipment located in Iberia Parish to Wagenwest, Inc., for the price of $95,000. In connection with the sale, defendant Wagenwest, Inc., executed a note endorsed by defendant David W. Wagenvoord, its president, for the balance owed together with interest thereon payable in 120 monthly installments. The balance was secured by a vendor’s lien and a chattel mortgage on the movable property which was subject of the sale.
Subsequently, on February 14, 1966, Wagenwest sold to Techeland the same radio broadcasting station, as well as the same fixtures and equipment it had purchased from plaintiff. There is a recitation in this sale that Paul M. Cochran, as holder of the promissory note in question, as well as other notes, appears and consents to the sale and mortgage but retains all security rights provided in the act of mortgage and vendor’s lien by which he sold the property to Wagenwest. It is significant that irrespective of the recitation, Cochran did not sign the act; moreover, in the act, purchasers did not assume the debts secured by mortgage and vendor’s lien but merely purchased “subject to” the pre-existing chattel mortgages and vendor’s lien bearing against the property purchased, with an express agreement that Wagenwest would pay the outstanding debt and that if Teche-land had to pay any installment, it was entitled to reimbursement from Wagenwest.
An agreement was entered into on August 14, 1968, between Wagenwest, represented by David Wagenvoord, and Queen City Broadcasting, Inc., in liquidation, represented by Paul M. Cochran, and by Paul M. Cochran, in proper person. The agree-» ment provided for reduction in the number of monthly installments and an increase in the amount of each installment. It further provided that Wagenwest deliver to and have titled in the name of Paul M. Cochran certain real property located in Texas. Cochran in return agreed to consider the outstanding note as current with a balance due but not in arrears.
Plaintiff filed suit against Wagenwest, Inc., and David W. Wagenvoord for the sum of $61,050.14 together with interest, attorney’s fees, and costs representing the balance due on a note and chattel mortgage securing certain fixtures and equipment made subject of the sale dated July 26, 1962. A writ of sequestration is sought in the same suit based on plaintiff’s vendor’s lien and mortgage. In seeking the writ, plaintiff alleges under LSA-R.C.C.P. *338 art. 3571[1] that it is within the power of defendants to conceal, dispose, or waste the property or revenues or to remove the property from Iberia Parish during the pendency of the action.
Defendants sought to dissolve and recall the writ of sequestration alleging first that plaintiff is unable to establish a valid lien, privilege, or chattel mortgage and second that it is not within the power of defendants to dispose of, conceal, or waste the property. Defendants further aver that plaintiff failed to serve a notice of default and failed to allow 30 days within which to cure the same. Damages are also sought by reason of the wrongful issuance of the writ.
An exception of peremption was filed by defendants and intervenor, Techeland, on the grounds that the chattel mortgage had not been reinscribed within five years from date of execution as provided in LSA-R.S. 9:5356 and, therefore, is not valid.[2]
After the matter was heard and before judgment, Techeland, by motion of intervention, sought to have the writ dissolved for the reason that the property is not now in the possession of the defendants and is owned by and under the control of inter-venor. Peremption was again urged because of plaintiff’s failure to reinscribe the mortgage.
Plaintiff questions the right of Wagenwest to urge the dissolution of the writ. Contending that defendants have no standing since they are not owners of the property sought to be sequestered and could not have sustained any actual damage as a result of the seizure, plaintiff argues that only Techeland could sustain damage; and they are not a party to the suit except by way of a questionable intervention filed subsequent to the hearing of the rule to set aside the writ.
We find no merit in this contention. The suit and sequestration is directed against defendants and not against Techeland. Moreover, in the act by which Wagenwest transferred the property to the third party, Techeland, defendants convey the property with all legal warranties and with full subrogation in and to any and all rights and actions of warranties which vendor has or may have. The obligation of warranty includes not only a guaranty of title but also a warranty to peaceful possession of the property conveyed. It reasonably follows that if defendants have the obligation as seller to warrant peaceful possession, they have the corresponding duty to defend actions brought against this peaceful possession of the property. Accordingly, this obligation must, therefore, presuppose a corresponding right to seek the dis *339 solution of the writ that disturbs or interferes with the peaceful possession warranted by the defendant. See: LSA-R.C.C. 2500, 2501, 2504, 2505. The obligation upon which the suit is based existed prior to the sale to Techeland and is antecedent to the obligation in warranty, LSA-R.C.C. 2502.[3] Therefore, it appears that the defendant not only has the obligation but the corresponding right to defend the peaceful possession of the property conveyed.
Moreover, were the third party deprived of the possession of the property, defendants could be subjected to damages under LSA-R.C.C. art. 2506(4).
In view of our conclusions that the defendants have the right to seek dissolution of the writ, we find no necessity to consider the question of the validity of the intervention by Techeland.
The next question is whether plaintiff has a security right, i. e., a vendor’s lien or chattel mortgage upon which to base or maintain its writ of sequestration.
LSA-R.C.C. arts. 3217(7) and 3227 [4] provide that the vendor may enforce his privilege only so long as the thing sold remains in the possession of the original vendee. Upon the sale and possession being taken by a third-party purchaser, the privilege is lost. See also: Pierson v. Carmouche, 146 La. 798, 84 So. 59 (1920); In Re Trahan, 283 F.Supp. 620, 626 (W.D. La.1968); Yates v. Merritt, 151 La. 344, 91 So. 759 (1922).
In this respect, the 1966 sale to Teche-land stated that the purchaser takes the property “subject to” particular liens and mortgages described in the act. However, no detailed reference is made to the sale and chattel mortgage dated July 26, 1962, by which defendant purchased from plaintiff.[5] The 1966 act, however, does state the sale is made subject to all existing privileges and mortgages bearing against the property. It is significant that the purchaser does not assume the debt secured by vendor’s lien and mortgage on which the sequestration is based. Had Techeland assumed this debt as part of Techeland’s purchase price, then it might be argued that the vendor’s privilege, securing the assumed debt, attached to the thing sold while in the possession of the third-party purchaser. See: De L’Isle v. Succession of Moss, 34 La.Ann. 164 (Orl.1882) and cases cited therein; Central Finance Co. v. Keating, 6 La.App. 155 (Orl.1927).
The court in De L’Isle, supra, 34 La. Ann. at page 168 said:
“Where the purchaser assumes to pay a mortgage debt of the vendor, the creditor has the right of proceeding against him directly.”
We believe the distinction between the concept of purchasing property “subject to” mortgages, liens, and privileges and pur *340 chasing property “assuming” the mortgage, lien or privileged debt, as argued by defendants, is sound. Purchasing “subject to” is an acknowledgment of the existence of the liens or mortgages bearing against the property purchased and is a recognition that the property is burdened with these encumbrances and to the extent that they are validly enforceable, will be superior to the interest acquired by the vendee. Compare LSA-C.C.P. arts. 2703(2) and 3743 (1).[6]
While Cochran did not sign the document, the evidence is that he was present at the sale to Techeland by Wagenwest and had knowledge of the transfer, either as intervenor or by his presence. In view of LSA-R.C.C. arts. 3217 and 3227, supra, we fail to ascertain, as contended by plaintiff, how knowledge by the third party vendee of the existence of liens and/or mortgages or the knowledge of Cochran that the property is the subject of a sale would preserve the vendor’s lien. Accordingly, it is our determination that the vendor’s lien and privilege was lost by the sale to the third-party purchaser, Techeland.
Although we have determined that plaintiff’s vendor’s lien has been lost, a valid chattel mortgage under the statute would serve as the basis for the issuance of the writ. Defendants argue that the chattel mortgage is lost by failure of plaintiff to reinscribe within five years from date of execution.[7] In order for the chattel mortgage to affect third parties, under the provision of LSA-R.S. 9:5353, it is necessary that the act of mortgage be filed in the office of the recorder of mortgages where the mortgaged property is located and in the parish wherein the mortgagor resides if he is domiciled in the state. If inscription is required to affect third persons, it necessarily follows that reinscription within five years of recordation under LSA-R.S. 9:5356 is required to sustain and continue such effect of the mortgage against third parties.
Plaintiff contends, however, that under LSA-R.S. 9:5353 inscription is not necessary for a chattel mortgage to be effective between the parties to the act but only to affect third parties. Therefore, reinscription is not necessary as between the parties, because LSA-R.S. 9:5356 is only applicable insofar as it affects third parties. Since defendants are parties to the chattel mortgage, the mortgage is still valid as against them, and there is no need to reinscribe.
Plaintiff’s contention would have merit were the property in the possession of the defendants and not conveyed to a third party. For purposes of exercising the right to seek a writ of sequestration, it appears that LSA-C.C.P. art. 3571 is referring to an effective and valid chattel mortgage. A writ of sequestration based on a chattel mortgage which has not been reinscribed cannot be effective against the defendants when the property has been sold to a third *341 party purchaser, as in this instance. The sequestration would directly affect Teche-land who was not a party to the mortgage.
We, accordingly, hold that for the plaintiff to have the right to rely on its chattel mortgage for the purpose of a writ of sequestration, when property is in the possession of a third party by reason of an intervening act of sale, LSA-R.S. 9:5356 is applicable. Reinscription is, therefore, required. Failure to so reinscribe vitiates the validity of the mortgage, and it is lost.
The record reflects that on December 30, 1970, the chattel mortgage sought to be relied upon by plaintiff was canceled because of the failure to have the same reinscribed. The cases cited by plaintiff state that re-cordation is not a requirement for the validity of the mortgage as between the parties to the mortgage. W. & W. Oil Co. v. American Supply Co., 8 So.2d 384 (La.App. 2nd Cir. 1942); Remington-Rand, Inc. v. Profits Island Gravel Co., 144 So. 636 (La.App. 1st Cir. 1933); Schutzman v. Dobrowolski, 191 La. 791, 186 So. 338 (1939). Nevertheless, recordation is a requirement for a chattel mortgage to affect third parties. LSA-R.S. 9:5353.
Plaintiff further argues that since the third party, Techeland, had actual knowledge of the existence of the chattel mortgage, this dispenses with the necessity of recordation.[8] If the recordation is defective, the chattel mortgage is still effective against such third persons who have actual knowledge.[9]
Appellant failed to bear the burden of proof necessary to preponderate that Teche-land had actual knowledge of the subject mortgage. The act by which Techeland acquired referred to specific chattel mortgages but did not include the subject mortgage. It follows that Techeland could not have gained this knowledge from the act by which it acquired. Therefore, Techeland cannot be charged with having actual knowledge of this particular chattel mortgage. Moreover, in view of our determination that the failure to reinscribe vitiates the mortgage, as it relates to the writ of sequestration of property in possession of a third party, we find no reason for considering this contention. The question of faulty recordation in this respect and the effect of actual knowledge as it relates to faulty recordation is academic.
For the foregoing reasons, we are of the opinion that the trial judge rightfully dissolved and set aside the writ of sequestration and accordingly, the judgment is affirmed.
The matter is remanded, however, for further proceedings on the merits, consistent with the views expressed herein.
Affirmed.

. LSA-R.C.C.P. art. 3571:
“When one claims the ownership or right to possession of property, or a mortgage, lien, or privilege thereon, he may have the property seized under a writ of sequestration, if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action.”

. LSA-R.S. 9:5356 reads :
“A. When any mortgage under this Part shall have been fully paid or satisfied the mortgage may be cancelled in any manner provided by law for the cancellation of mortgages on immovable property. The effect of a chattel mortgage shall cease if the inscription thereof has not been renewed in the same manner in which it was first made by the recorder of mortgages within five years from the date of the execution of the act of mortgage. Rein-scription shall renew the effect of the mortgage for the amount unpaid for a period of five years from the date of the reinscription and further renewals may be made thereafter from time to time, the effect of each new reinscription being for five years from its date. Chattel mortgages heretofore given and not already prescribed under existing law, may be re-inscribed by complying with this procedure. The recorder of mortgages shall each receive one dollar for each cancellation and two dollars for each reinscription of a mortgage under this Part.
“B. Recorders of mortgages may destroy the chattel mortgage records in their respective offices six years after the date of their recordation unless they have been re-inscribed in the form and manner herein provided.”

. LSA-R.C.C. 2502 reads :
“That the warranty should have existence, it is necessary that the right of the person evicting shall have existed before the sale. If, therefore, this right before the sale was only imperfect, and is after-wards perfected by the negligence of the buyer, he has no claim for warranty.”

. LSA-R.C.C. art. 3217(7) reads:
“The debts which are privileged on certain movables are the following :
“7. The price due on movable effects, if they are yet in the possession of the purchaser.”
LSA-R.C.C. art. 3227 reads :
“He who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, whether the sale was made on a credit or without, if the property still remains in the possession of the purchaser.” (emphasis ours)

.The act does contain (in that part of the act relating to a purported intervention by Cochran) a reference “that there is presently due and owing a principal balance of approximately $50,000.00 on said note or notes in the original sum of $75,000.00, dated _, and a principal balance due and owing of $15,000.00 on the note dated January 3, 1966, in the original sum of $15,000.00.”

. LSA-C.C.P. art. 2703 reads:
“When property sold or otherwise alienated by the original debtor or his legal successor has been seized and is about to be sold under executory process, a person who has acquired the property subject to the mortgage or privilege thereon and who has not assumed the payment of the indebtedness secured thereby may: * * *
“(2) Arrest the seizure and sale on any of the grounds mentioned in Article 2751, or on the ground that the mortgage or privilege was not recorded, or that the inscription of the recordation thereof had perempted; or, * * * ”
LSA-C.C.P. art. 3743 reads :
“When property subject to a legal or a judicial mortgage is seized to enforce the mortgage, or is about to be seized for this purpose, and the property is no longer owned by the original debtor, the third possessor has the following rights :
“(1) To arrest the seizure, or threatened seizure, and consequent judicial sale of the property by injunction on the grounds that the mortgage was not recorded, that the inscription of its recordation had per-empted, or that the debt secured by the mortgage is prescribed or extinguished, or to plead discussion as provided in Articles 5154 and 5155; and * * * ”

. See: LSA-R.S. 9:5356, Footnote 2, supra.

. The requirement under LSA-R.S. 9 :5353 is that recordation be in both parishes when the property is located in one parish and the mortgagor resides in another.

. Southern Enterprises v. Foster, 203 La. 133, 13 So.2d 491 (1943); First National Bank in Mansfield v. Lawrence, 207 So.2d 907 (La.App. 2nd Cir. 1968); appeal dismissed, 253 La. 54, 216 So.2d 304 (1968); United Novelty Co. v. Salemi, 68 So.2d 808 (La.App. 2nd Cir. 1953).